### MEYER v. UNITED STATES.
### No. 10924.

United States Court of Appeals,
Seventh Circuit.

May 18, 1954.

A. W. Schutz, Milwaukee, Wis., for appellant.

H. Brian Holland, Asst. Atty. Gen., Melva M. Graney, Sp. Asst. to the Atty. Gen., Washington, D. C., Timothy T. Cronin, U. S. Atty., Milwaukee, Wis., Ellis N. Slack, Dudley J. Godfrey, Jr., Sp. Assts. to the Atty. Gen., E. J. Koelzer, Asst. U. S. Atty., Milwaukee, Wis., for appellee.

Before DUFFY, FINNEGAN and LINDLEY, Circuit Judges.

FINNEGAN, Circuit Judge.

Plaintiff taxpayer sold his interest in a partnership, conducted with two other men in Milwaukee, Wisconsin, under written articles of partnership. Taxpayer transferred that interest to the wife of one of his partners, receiving in payment thereof her check, equivalent to taxpayer's original capital contribution plus his share of accumulated unwithdrawn partnership profits, credited to his capital account. On the facts, hereinafter detailed, we are asked to decide if capital gains treatment should be accorded to the entire payment received by this taxpayer.

Dismissal of plaintiff-taxpayer's complaint to recover $8,156.10 of taxes paid, on individual income, and deficiency interest for the calendar year 1945 precipitated this appeal of the lower court's

judgment. Taxpayer properly invoked the jurisdiction of the district court, under 28 U.S.C. § 1346(a)(1), to claim a refund of income taxes which he asserts were erroneously collected under adjustments made by the Commissioner [1] to his tax return for that calendar year. The Commissioner had proposed a deficiency assessment of $7,109.12. Though this taxpayer disagreed with a part of these adjustments, he paid that deficiency plus interest of $1,158.49, on December 6, 1948, in order to toll the running of interest. Taxpayer's subsequent claim for refund of $8,156.10 was rejected by the Commissioner, and this complaint followed. Sitting without a jury the district judge made findings of fact and conclusions of law resolving issues crystalized by that complaint and the government's answer.

Portions of the stipulated facts, pertinent to our opinion, follow. Taxpayer, an engineer, entered into a written partnership agreement, on December 1, 1943, with Joseph Doering and David C. Fee to operate a job machine shop business under the name of Brenner Manufacturing Company, in Milwaukee, Wisconsin.[2] Capital contributions made by these three partners and their respective profit and loss sharing arrangements were:

| Partner | Capital Contribution | Share of Profits or Loss |
|---|---|---|
| Plaintiff-Taxpayer | $ 5,500 | 25% |
| Joseph Doering | $11,000 | 50% |
| David C. Fee | $ 5,500 | 25% |

Books of the partnership were kept and its income tax returns filed on an accrual and fiscal basis of accounting, ending June 30. Taxpayer filed his tax returns on a cash and calendar year basis. He received and reported, for calendar year 1944, his distributive share of Brenner's net profits for the period December 1, 1943 to June 30, 1944.

A breakdown of the taxpayer's partnership interest as of February 28, 1945, reflected in his investment account, on Brenner's books, showed:

| | | |
|---|---|---|
| Original Investment: | | $ 5,500 |
| Profits: July 1, 1944 to February 28, 1945 | $24,531.92 | |
| Less: Withdrawal made January 14, 1945 | 1,885.92 | 22,646 |
| Book Value: | | $28,146 |

No balance sheet was shown taxpayer, he merely accepted the word of his partner, Joseph Doering that this was the book value. But the partnership books and records were open at all times to examination by this taxpayer.

On February 28, 1945 this taxpayer told Doering and Fee that he desired to retire from their partnership, and offered to sell them his partnership interest for a sum equal to that book value. A controversy thereupon arose as to whether Doering or Fee would be the buyer of taxpayer's partnership interest, and thus delayed the sale. But this difficulty was surmounted by an agreement, dated April 13, 1945, between taxpayer and Florence K. Doering, wife of Joseph Doering, partner of Fee and this taxpayer. Both Fee and Joseph Doering consented to that instrument under the terms of which Mrs. Doering paid taxpayer $28,146 (the aforesaid book value) for "* * *

---

1. Being the correct designation at that time.

2. It was expressly stipulated by taxpayer and government counsel that the Uniform Partnership Act, State of Wisconsin, §§ 123.22, 123.23, Wisconsin Statutes of 1945, provided:

   Sec. 123.22: "Partners interest in partnership. A partner's interest in the partnership is his share of the profits and surplus and the same is personal property."

   Sec. 123.23: "Assignment of partner's interest. (1) A conveyance by a partner of his interest in the partnership does not of itself dissolve the partnership nor, as against the other partners in the absence of agreement entitle the assignee, during the continuance of the partnership, to interfere in the management or administration of the partnership business or affairs, or to require any information or account of partnership books; but it merely entitles the assignee to receive in accordance with his contract the profits to which the assigning partner would otherwise be entitled."

all his right, title and interest in the partnership * * * including any and all property of such partnership and the right to an accounting from all the partners thereof other than (taxpayer) * * *." This written agreement also contained a recital that the taxpayer " * * * does hereby resign from any participation in the management of * * *" the partnership. That agreement was made effective as of February 28, 1945 which was the date for which taxpayer's partnership interest had been valued. Expenses of $750 were incurred by the taxpayer in connection with his sale thus made pursuant to the agreement with Florence Doering.

No partnership return was filed by Brenner for the period July 1, 1944 to February 28, 1945. But on September 15, 1945 a partnership income tax return for the fiscal year ended June 30, 1945, reporting ordinary net income of $145,426.19 was filed showing the following partnership net income to be distributable:

| | |
|---|---|
| Taxpayer | $ 24,531.92 |
| Joseph Doering | 73,129.75 |
| David C. Fee | 41,176.20 |
| Florence Doering | 6,588.32 |
| Total | $145,426.19 |

When Florence Doering filed her individual income tax return for calendar year 1945 she included $6,588.32 in gross income, as and for her distributive share of the partnership net income. Taxpayer reported, in his personal tax return for the calendar year 1945, as his distributive share of partnership net income for the fiscal year ended June 30, 1945 only so much of partnership profits for that fiscal year as were actually distributed to him by the partnership prior to the time he sold his interest therein.

However, in that same tax return, for 1945, taxpayer also reported $10,948 as a taxable long-time capital gain realized on the sale of his partnership interest in Brenner, which he detailed as follows:

| Gross sales price: | | $28,146. |
|---|---|---|
| Less: | | |
| Cost or other basis | $5,500 | |
| Expenses of sale | 750 | 6,250. |
| Total | | $21,896. |
| Long term capital gain—50% | | $10,948. |

As a result of auditing taxpayer's income tax return for the year 1945, the Commissioner increased taxpayer's distributed share of the net profits, of Brenner, for July 1, 1944 to February 28, 1945, from $24,531.92 (per Brenner's books) to $24,882.22, and treated the $24,882.22 as ordinary income, taxable in full. For the purpose of determining taxpayer's gain or loss on the sale of his partnership interest, there was included in his cost basis, his distributive share of unwithdrawn partnership earnings for the period July 1, 1944 to February 28, 1945, i. e.,

| Cost of Partnership Interest: | | |
|---|---|---|
| Original investment | | $ 5,500.00 |
| Profits for period July 1, 1944 to February 28, 1945 | $24,882.22 | |
| Less withdrawals | 1,885.92 | 22,996.30 |
| Cost | | $28,496.30 |
| | | |
| Received from Sale: | | |
| Sale price | $28,146.00 | |
| Less expense of sale | 740.00 | |
| Net Receipts | | $27,396.00 |
| | | |
| Loss on sale | | 1,100.30 |
| 50% taken into account as long term capital loss | | 550.15 |

Florence and Joseph Doering became equal partners in Brenner, after Florence Doering acquired David C. Fee's partnership interest, by purchase made subsequent to the year 1945. No amendment or discontinuance of the name Brenner Manufacturing Company was filed with the Register of Deeds of Milwaukee County, pursuant to section 343.722, Wisconsin Statutes, 1945. And no notice of the termination of the partnership, pursuant to the partnership agreement, was served upon taxpayer by either Fee, Joseph or Florence Doering.

Returns of partnership income for Brenner were duly filed with the Wisconsin Department of Taxation for the

fiscal years ended June 30, 1944, 1945, 1946 and 1947.

We disagree with the district court's conclusions of law, on these pleadings and stipulated facts, that the original partnership between taxpayer, Joseph Doering and David C. Fee was dissolved in 1945 when taxpayer retired from their firm and Mrs. Doering was admitted in his place. We also think that the trial judge erroneously concluded that taxpayer's distributive share of Brenner's earnings from July 1, 1944 to February 28, 1945 was taxable as ordinary income.

It was expressly found below, that after entering into the agreement with Florence Doering, taxpayer ceased to be associated with Joseph Doering and David C. Fee in carrying on Brenner's business; that he retained no ownership in the partnership nor its property and he retained no right to participate in the future profits or management of that business.

We are asked by the government to depart from our holding in Swiren v. Commissioner, 7 Cir., 1950, 183 F.2d 656 because of a subsequent enunciation of policy in Watson v. Commissioner, 1953, 345 U.S. 544, 73 S.Ct. 848, 97 L.Ed. 1232. While on the other hand taxpayer would have us adhere to our theory announced in the Swiren case, supra, where we viewed a lawyer's sale of his interest in a partnership law firm as the sale of a capital asset despite the fact part of the purchase price paid him was for amounts due for personal services. In the Swiren case [183 F.2d 660] the retiring partner was paid, at the time of his withdrawal from the firm, a sum coinciding with the amount of fees uncollected at that time by his firm, plus his share in other assets of the partnership. We pointed out that "uncollected fees for work in process not yet completed had not been transformed on the date of taxpayer's sale of his interest into gross income within the meaning of Sec. 183(b)(2), Internal Revenue Code, 26 U.S.C.A. § 183(b)(2)." 183 F.2d 656, 660. Those fees were for personal services and we particularly observed that "Taxpayer was on a cash receipts basis, as was the partnership." At the same time we there said: " * * taxpayer's partnership interest as a whole was a capital asset within Sec. 117 of the Internal Revenue Code * * *." 183 F.2d 660.

Watson v. Commissioner, 1953, 345 U.S. 544, 73 S.Ct. 848, was reviewed by the Supreme Court after Congress amended § 117(j) of the Internal Revenue Code.[3] To be sure, the taxpayer there, who owned an undivided interest in an orange grove, sold her interest midway in the 1944 growing season, including an unmatured crop then on the trees. She was engaged in the business of growing and selling oranges produced by that grove. The decision of the Ninth Circuit requiring that she treat that part of her profit from this sale which was attributable to the unmatured crop as ordinary income was affirmed. In rejecting taxpayer's contentions seeking capital gain treatment for the unharvested crop the Supreme Court stressed that the status of the unmatured crop as real property was a matter of federal law emphasized by the affirmative statement of Congress, cited above. Mr. Justice Burton, speaking for the Watson case majority pointed out, 345 U.S. 551-552, 73 S.Ct. 848, 853,

"The Commissioner's treatment of the proceeds of sales of unmatured crops as ordinary income in the absence of a statutory requirement to the contrary is consistent with the policy evidenced in

3. An addition to § 117(j) of the Internal Revenue Code, 65 Stat. 500, 26 U.S.C. (Supp. V) § 117(j) (3), 26 U.S.C.A. § 117(j) (3). Also requiring attention is § 24(f) Internal Rev.Code, 65 Stat. 501, 26 U.S.C. (Supp. V) § 24(f), 26 U.S.C.A. § 24(f). Mr. Justice Minton, joined by Justices Reed and Douglas dissented saying, inter alia, that the "immature oranges were real property when the orange grove was sold." 345 U.S. 554, 73 S.Ct. 854. These dissenters urged that since real property is not defined in the Revenue Act the Court should look to California law in making such a determination. "Under that law, this crop of oranges passed as real estate." 345 U.S. 544, 554–555, 73 S.Ct. 848, 854.

Williams **v.** McGowan, 2 Cir., 152 F.2d 570, 572, 162 A.L.R. 1036 * * *.''

Clearly that Congressional amendment was the decision point of Watson v. Commissioner, supra, and the above-quoted mention of Williams v. McGowan is not persuasive on the facts in this present appeal for reasons which are hereafter discussed.

■■ We can put to one side as well settled the proposition that a partnership interest is a capital asset [4] and when sold warrants treatment as does that class of assets. In the instant appeal taxpayer's partnership was on an accrual basis.[5] When he sold to Florence Doering, as of February 28, 1945, his capital account had been credited with $24,-531.92 which represented his share of the partnership profits earned and accrued for the period July 1, 1944, to February 28, 1945. This record is devoid of evi-

4. While Bureau rulings do not reach the same status as Treasury Department Regulations we think Rev.Rul. 144, 16 R.B. 1953–29, 30 deserves mention as indicating administrative reaction to the situation at hand:

"Advice is requested respecting the effect on a partnership, for Federal income tax purposes, of the death, withdrawal, substitution or addition of a partner. * * *

G.C.M. 26379, C.B. 1950–1, 58, holds that a sale of a partnership interest under certain circumstances is treated as a sale of a capital asset, distinct from the partner's interest in the partnership assets, and thereby recognizes that for tax purposes a partnership may continue beyond changes in membership.

Accordingly, it is held that a change in the membership of a partnership resulting from the death, withdrawal, substitution, or addition of a partner, or a shift of interest among existing partners does not, in itself, effect a termination of a partnership for Federal income tax purposes. Ordinarily, a partnership will be treated as continuing where the business of the partnership, or a substantial portion thereof, is continued. The returns of a continuing partnership should continue to be filed on the basis of the annual accounting period previously established by the partnership. A partnership's basis in its assets is distinct from the partners' bases in their partnership interests, and is not affected by changes in such partnership interests. The bases of the interests of the partners in the partnership interests are increased by the amount paid for a retiring partner's interest, and in the event of the death of a partner the basis of his partnership interest to his estate is the fair market value of such interest at the date of his death.

In view of the foregoing, O.D. 228, C.B. 1, 190 (1919) is hereby revoked.

It is not intended herein to state that a partnership is invariably to be treated as a unit intervening between a partner and partnership transactions and income for Federal tax purposes."

Of course the current position of the Internal Revenue service is reflected in G.C.M. 26379, 1950—1 Cum.Bull. 58, 59 where Chief Counsel states, inter alia:

"It is accordingly the opinion of this office that the sale of a partnership interest should be treated as the sale of a capital asset under the provisions of § 117 of the Internal Revenue Code. The application of this rule should, of course, be limited to those cases in which the transaction in substance and effect, as distinguished from form and appearance, is essentially the sale of a partnership interest * * * For example, payments made to a retiring partner which represent his distributive share of earnings for past services should be treated as ordinary income rather than proceeds derived from a sale of his interest. * * *''

See also: Survey and Warren, The Income Tax Project of the American Law Institute, 66 Harv.L.Rev. 1161, 1171 (1953) for a trenchant discussion of the "entity" and "aggregate" approaches. Especially at pp. 1175 ff. where these authors report that: "Under present law the sale of a partnership interest is treated like the sale of a capital asset;" See: February 1954 Draft, II Federal Income Tax Statute, American Law Institute, Sec. X 760, page 406 at page 407.

5. This case is, incidently, of the more uncommon type, because taxpayer is on a cash basis and his partnership had not yet actually received the income which was accrued by it.

Section 182 of the Internal Revenue Code (26 U.S.C.1946 ed., sec. 182) provides:

"In computing the net income of each partner, he shall include, whether or not distribution is made to him * * *

"(c) His distributive share of the ordinary net income or the ordinary net loss of the partnership, computed as provided in section 183(b)."

dence demonstrating that any part of the $24,531.92 embodied taxpayer's share of earnings for past services.[6] Of course, if prior to selling his partnership interest this taxpayer had eventually drawn out portions of the $24,531.92 such amounts would have been taxable as ordinary income. We think that this record fails in establishing, to our satisfaction, that taxpayer's sale to Florence Doering was merely a mechanism for this taxpayer to receive earnings resulting from prior activities at capital gain rates. We are also aware that with Brenner operating on a fiscal year, as its annual accounting period, and this taxpayer on a calendar year basis of reporting, taxes on such profits would be postponed until a succeeding taxable year.

By reducing the foregoing facts to their essential terms we think our decision pivots on whether taxpayer simply received a return of his original capital investment, $5,500 plus an advance withdrawal of his share of partnership earnings or whether he actually sold a capital asset in which was bundled up his original investment, profits, rights to future participation in profits and interests in the partnership assets. It must be remembered that under his agreement with Florence Doering this taxpayer sold " * * * all his right, title and interest in the partnership * * *." That the selling price neatly coincides with the figures posted in taxpayer's capital account, on the partnership books, is beside the mark. He simply sold his interest in the partnership for its book value.

We think the appeal pending before us is distinguishable, factually,[7] from Williams v. McGowan, 2 Cir., 1945, 152 F.2d 570 and particularly because Judge Learned Hand directed attention to the basic aspect of that case by saying: "When Williams bought out Reynolds' interest, he became the sole owner of the business, *the firm had ended upon any theory,* and the situation for tax purposes was no other than if Reynolds had never been a partner at all, except that to the extent of one-third of the 'amount realized' on Williams' sale to the Corning Company, his 'basis' was different. * * We have to decide only whether upon the sale of a going business it is to be comminuted into its fragments, and these are to be separately matched against the definition in § 117(a)(1), or whether the whole business is to be treated as if it were a single piece of property." 152 F.2d 572; italics supplied.

But it clearly appears on the record we are now reviewing, that there was actually a sale of taxpayer's total and aggregate interest; that he withdrew from the partnership and Brenner Manufacturing Company actually continued business after this taxpayer's severance. Moreover the agreement between tax-

6. While the articles of their partnership provided for salaries of $10,000 to be paid to Fee and Joseph Doering (clauses 9 and 10), we note clause 11 (T.R. 15): "Arnold Meyer shall render engineering advice and service to the partnership at such times as is reasonable and compatible with his duties with other concerns. He shall *not be entitled to draw a salary* but shall be directly compensated on a reasonable daily fee basis for such engineering services as he renders the partnership." (Italics supplied.)

7. In passing we point up Judge Frank's comment, when dissenting, 152 F.2d 570, 573: "To carve up this transaction into distinct sales—of cash, receivables, fixtures, trucks, merchandise, and goodwill— is to do violence to the realities."
e. g., Judge Hand reported these facts 152 F.2d 571:
"Williams settled with Reynolds' execu-

trix on September 6th in an agreement by which he promised to pay her $12,187.90, and to assume all liabilities of the business; and he did pay her $2,187.98 in cash at once, and $10,000 on the 10th of the following October. On September 17th of the same year, Williams sold the business as a whole to the Corning Building Company for $63,926.28—its agreed value as of February 1, 1940—'plus an amount to be computed by multiplying the gross sales of the business from the first day of February, 1940 to the 28th day of September, 1940,' by an agreed fraction. This value was made up of cash of about $8100, receivables of about $7000, fixtures of about $800, and a merchandise inventory of about $49,000, less some $1000 for bills payable. To this was added about $6,000 credited to Williams for profits under the language just quoted, making a total of nearly $70,000."

payer and Florence Doering contains no specific allocation of the total selling price to any particular component part of the partnership interests sold and we cannot, under such facts, undertake to reduce $28,146.00 into matching fragments.

The government has urged that this taxpayer has "realized" partnership profits for the July to February period in question. And it might also be argued that as to this taxpayer, he had a right to his distributive share of the partnership profits when they were accrued. But we find he sold out his entire partnership interest, quit the firm, and disposed of a capital asset. He was entitled to the long term capital gain treatment as sought in the complaint filed below. Our disposition of this appeal precludes any need to discuss, or dispose of, the constitutional question raised by taxpayer.

The judgment of the District Court must be vacated and the cause remanded to that court for proceedings not inconsistent with this opinion. It is so ordered. Judgment of the District Court is vacated and this cause remanded with directions.