UNITED STATES of America and Calvin E. Wright, Collector of Internal Revenue for the District of Idaho, Appellants,

v.

John D. SNOW and Grace K. Snow, Husband and Wife, Appellees.

No. 14129.

United States Court of Appeals Ninth Circuit.

May 3, 1955.

H. Brian Holland, Asst. Atty. Gen., Louise Foster, Hilbert P. Zarky, Ellis N. Slack, Special Assts. to Atty. Gen., Sherman F. Furey, Jr., John T. Hawley, Asst. U. S. Atty., Boise, Idaho, for appellants.

Elam & Burke, Boise, Idaho, for appellees.

Before HEALY, BONE and POPE, Circuit Judges.

BONE, Circuit Judge.

The appellees filed separate individual income tax returns with the Collector of Internal Revenue for the District of Idaho for the taxable year 1945. In these tax returns, appellees accounted for a community property net gain from the

---

sale of one-fourth interest in a partnership. The entire receipt, minus the basis, was treated as a capital gain under Section 117 of the Internal Revenue Code, 26 U.S.C. § 117. The Collector of Internal Revenue levied an additional tax assessment for the taxable year 1945 on the individual return of John D. Snow in the amount of $20,376.60, including interest, and a like amount upon the individual return of his wife, Grace K. Snow, because the sale was not the sale of a capital asset as reported, but rather resulted in the receipt of ordinary income.

The appellees filed a claim with the Collector for the refund of the assessments and penalties and the claim was disallowed. Appellees brought suit for refund in the lower court to recover the additional sums paid. The court rendered judgment for appellees and the defendants below appealed.

On March 1, 1944, appellee, John D. Snow, associated himself as copartner with Burdell T. Curtis and R. L. Simplot, by written agreement for the purpose of transacting a produce and brokerage business in the growing, storing, purchasing, selling, shipping and warehousing of vegetables, farm produce and farm products of every kind.

From the Stipulation of Facts entered into by the parties we note:

"That on March 1st, 1944, Burdell T. Curtis, R. L. Simplot and the plaintiff [appellee] herein, after dissolution of the * * * [prior partnership] associated themselves together by written instrument, as copartners under the laws of the State of Idaho, under the firm name and style of Simplot Produce Company, with its principal place of business at Burley, Idaho. * * *

"The amount of capital assets contributed by each of said partners and prospective shares of profit and loss was as follows:

John D. Snow          $ 71,323.37
  *     *     *     *     *     *

"Shares of loss and profit:
  *     *     *     *     *     *
John D. Snow                25%
  *     *     *     *     *     *

"That the book value of all assets and liabilities of said partnership, together with the interest and proprietorship of said partners as of February 28, 1945, as shown by balance sheet of said books on said date was as follows: [summarized]

## Assets

| | |
|---|---|
| Current Assets | $650,115.62 |
| Fixed Assets | 24,948.84 |
| Total Assets | $675,064.46 |

## Liabilities

| | |
|---|---|
| Current Liabilities | $171,293.45 |

## Proprietorship

| | | |
|---|---|---|
| Total Proprietorship | $503,711.01 | |
| John D. Snow investment March 1, 1944 | | $ 71,323.37 |
| Add net increase | $ 97,555.14 | |
| Less withdrawals | 35,032.00 | |
| Net increase to proprietorship | | 62,523.14 |
| Total proprietorship Feb. 28, 1944 | | $133,846.51 |

"That on the 28th day of February, 1945, plaintiff [appellee] herein, by written agreement, executed an assignment of his interest in said partnership to Burdell T. Curtis and R. L. Simplot. * * * "

Appellee husband testified that the "yardstick" for the assignment was his "book value" in the partnership, which was $133,000 (hereafter all figures will be rounded). It is readily seen from the capital account of appellee (above), and as related in his testimony, that this sum represents original investment of $71,000 plus appellee's share of accrued but undistributed earnings of the partnership for the year in the amount of $62,000. Appellee withdrew $35,000 of the partnership earnings during the year so had only $62,000 undistributed earnings to his credit on the last day of the partnership fiscal year, which was also the day of the above noted assignment.

Appellee did not actually receive the $62,000 credited to him in his capital account but assigned this right to the two remaining partners, Curtis and Simplot. The assignment is in the form of a general statement followed by a specific reference to appellee's interest in his capital account.

We were informed at oral argument (and the partnership return reflects) that the partnership was on the accrual accounting basis. The appellees reported on the cash receipts basis. Although appellees were on the cash receipts tax accounting basis, the lack of actual receipt presents no problem because of the language of 26 U.S.C. § 182:

"In computing the net income of each partner, he shall include, *whether or not distribution is made to him—*

\* \* \* \* \* \*

"(c) *His distributive share of the ordinary net income* \* \* \* *of the partnership* \* \* \*." (Emphasis added.)

The assignment which was consummated on February 28, 1945, reads as follows:

"Now, Therefore, for and in consideration of the sum of Ten Dollars and other good and valuable consideration to the assignors in hand paid by the assignees, receipt whereof is hereby acknowledged;

"The assignors do hereby sell, assign, transfer and set over to the Assignees, to each of them, an equal undivided one-half interest therein, all of the right, title and interest of the Assignors in and to all of the property and assets of said partnership and of J. D. Snow individually in the capacity of one of the partners in said partnership, including (but not limited to) all lease interests, accounts receivable, notes receivable, personal property, real property, and the interest of the Assignors in the Capital Account of said partnership."

The receipt of $133,000 was treated by appellees as proceeds from the sale of a capital asset. The above noted investment in the firm of $71,000 was subtracted from the sale price of $133,000 to obtain what appellees regard as a long term capital gain of $62,000.

The principal concern of the parties in the court below was whether this transaction was a bona fide sale. The trial court found as a matter of fact that the sale was bona fide and then concluded that the entire transaction should be given capital gains treatment.

"It would seem then that having found the transaction to be a bona fide sale, the conclusion under the law should be that it should be treated as a sale of a capital asset and the plaintiffs should be awarded judgment in their suit for refund."

On appeal, there is no contention that the sale or assignment was not bona fide.

The lower court concluded that the entire gain was derived from the sale of a capital asset:

"The transaction here involved was the sale of a one-fourth interest in the said partnership, and the gain derived by the taxpayer herein as a result of said sale was derived from the sale of a capital asset, as defined by Section 117, Title 26 U.S.C.A."

A general question on appeal is whether the appellees properly included the undistributed earnings in the amount of $62,000 as proceeds from the sale of a capital asset or whether this amount should be treated as ordinary income.

The more precise issue for this court to consider is whether appellees' share of the partnership ordinary income can be transformed from ordinary income to capital gain by regarding the entire transaction as the sale of a capital asset.

Appellees argue that an interest in a partnership is such that the partner's right to accrued ordinary income owing to him and credited to him on the partnership books is absorbed in the greater partnership interest and should not be treated separately. In support of this argument appellees point out that partnership property cannot be sold by one partner without the consent of the other partners. The property is held as tenants in partnership. Hence, any interest in the partnership must be an undivided interest sold as an indivisible whole.

This argument is true only as to a partner's right in *specific partnership property* and is not true as to the *capital account* of an individual partner, at least for tax purposes. His share of the accrued partnership ordinary income for the year ($97,000) was credited to him *personally* on the books and subject to withdrawal as well as individual taxation.

Appellee husband had personally drawn $35,000 from this account during the year and admits this amount to be his ordinary income. Yet, as to the taxpayer's remaining share of the accrued partnership ordinary income ($62,000) which he did not actually draw, but assigned to the remaining partners, the taxpayer asserts that this must be regarded as part of his interest in a capital asset.

26 U.S.C. § 182, referred to above, sets forth:

"In computing the net income of each partner, he shall include, whether or not distribution is made to him—

\* \* \* \* \* \*

"(c) His distributive share of the ordinary net income \* \* \* of the partnership, computed as provided in section 183(b)."

This statutory command is quite clear. It demands that a partner include in his tax computation his share of the partnership ordinary income whether he receives it or not. Section 183(b) permits him to treat his share of profit realized by the partnership from the sale of a capital asset as if he individually had realized the gain from the sale of a capital asset. Otherwise, he reports his share of the partnership ordinary income as his own ordinary income, whether he receives it or not. We find no room to doubt that a partner must report his *accrued share* of partnership ordinary income as his own ordinary income, whether he receives it or not.

Appellees argue that this remaining amount of $62,000 which was credited to his account should not be regarded as his ordinary income because this was merely a bookkeeping entry and in reality there was not cash amounting to $62,000 which Snow could pick up at any time. While bookkeeping entries are to an extent fictions, nonetheless they represent the method by which profits are computed, and are the required basis for computing income tax.

This decision does not in any way rest upon the doctrine of Williams v. McGowan, 2 Cir., 152 F.2d 570, 162 A.L.R. 1036. It assumes a full acceptance of the holdings of Stilgenbaur v. United States, 9 Cir., 115 F.2d 283, and Hatch's Estate v. C.I.R., 9 Cir., 198 F.2d 26, to the effect that an interest in a partnership is a capital asset. However, we have no desire to extend Hatch's Estate v. C.I.R. beyond all normal and statutory bounds and ignore the fundamental rule that income derived from a capital asset is ordinary income.

Two cases in the Seventh Circuit support appellees' contention. The first is

Swiren v. C.I.R., 183 F.2d 656, 660, certiorari denied 340 U.S. 912, 71 S.Ct. 293, 95 L.Ed. 659. The court in the Swiren case was apparently satisfied that its decision should follow when it determined that the subject matter of the sale was that of a capital asset. The court concluded its opinion:

> "The Commissioner and the Tax Court, while correct in part in regarding as a capital asset taxpayer's unrecovered net investment and allowing recovery therefor in full amount, failed to recognize that, as a matter of law, taxpayer's partnership interest as a whole was a capital asset within Sec. 117 of the Internal Revenue Code, with the gain attending the sale thereof taxable as a capital gain, and not otherwise."

Judge Kerner, dissenting from the Swiren majority opinion, said:

> "The courts have said that the sale of a right to receive ordinary income is not the sale of a capital asset. This is so even if the sale is of something which may be termed 'property.' In such a situation the sale price simply replaces the future income, but the sale price does not convert the ordinary income into capital gain. Hort v. Commissioner, 313 U.S. 28, 61 S.Ct. 757, 85 L.Ed. 1168."

It also appeared to be quite important to the majority of the court in the Swiren case that the partnership was on the cash receipts tax accounting basis. In the instant case the partnership was on the accrual basis.

We believe that the Swiren case could be distinguished from the case at bar by giving greater attention to the dichotomy between capital gain and ordinary income and by emphasizing the different accounting bases of the partnerships. However, in 1954 the Seventh Circuit was presented with a fact pattern which is highly comparable to the case at bar. See Meyer v. United States, 213 F.2d 278.

In the Meyer case the Seventh Circuit reversed the lower court's determination that a partner's distributive share of the accrued earnings must be regarded as ordinary income and cannot be included, upon sale, within the same category as the capital asset which produced the earnings.

The court in the Meyer case considered, but refused to follow, the Supreme Court's decision in Watson v. Commissioner, 345 U.S. 544, 73 S.Ct. 848, 97 L.Ed. 1232, which affirmed our opinion in 197 F.2d 56.[1] The Seventh Circuit chose to adhere to its theory announced in the Swiren case where it

> "* * * viewed a lawyer's sale of his interest in a partnership law firm as the sale of a capital asset despite the fact part of the purchase price paid him was for amounts due for personal services." 213 F.2d 278, 281.

The court in the Meyer case continued:

> "In the Swiren case [183 F.2d 660] the retiring partner was paid, at the time of his withdrawal from the firm, a sum coinciding with the amount of fees uncollected at that time by his firm, plus his share in other assets of the partnership. *We pointed out that 'uncollected fees for work in process not yet completed had not been transformed on the date of taxpayer's sale of his interest into gross income within the meaning of Sec. 183(b) (2),* Internal

---

1. In Trousdale v. C.I.R., 219 F.2d 563, this court expressed in footnote number five:
   "We feel much less sure than did the court in the Meyer case that it was able to distinguish the Watson case. A holding that on a sale of an orange grove for a lump sum, the Commissioner may segregate and charge as ordinary income so much of the price paid as is found to be the value fairly attributable to the presence of an unmatured crop at the time of sale, might well suggest doubts about the soundness of the decision in the Swiren case."
   We now think the Swiren and Meyer cases in the Seventh Circuit cannot be reconciled with the rationale of the decision in Watson v. United States, 345 U.S. 544, 73 S.Ct. 848, 97 L.Ed. 1232.

Revenue Code, 26 U.S.C.A. § 183(b) (2).' 183 F.2d 656, 660. *Those fees were for personal services and we particularly observed that 'Taxpayer was on a cash receipts basis, as was the partnership.'* At the same time we there said: ' * * * taxpayer's partnership interest as a whole was a capital asset within Sec. 117 of the Internal Revenue Code * * *.' 183 F.2d 660." (Emphasis added.)

The court in the Meyer case appears to rely upon its language in the prior Swiren case—the Meyer case was substantially different in that the partnership in the Meyer case was on the accrual tax accounting basis and uncollected fees would be " 'gross income within the meaning of Sec. 183(b) (2), Internal Revenue Code, 26 U.S.C.A. § 183 (b)(2).' "

The court in the Meyer case, as well as the trial court, appeared to be satisfied that capital gains treatment must necessarily follow if it were determined that the subject of the sale could be *labeled* a capital asset and the sale was in good faith. In short, both courts apparently assumed that a taxpayer can sell or assign a right to receive ordinary partnership income and treat any gain as a capital gain, so long as the capital asset which produced the ordinary income is also transferred. The court in the Meyer case concluded:

"The government has urged that this taxpayer has 'realized' partnership profits for the July to February period in question. And *it might also be argued that as to this taxpayer, he had a right to his distributive share of the partnership profits when they were accrued. But we find he sold out his entire partnership interest, quit the firm, and disposed of a capital asset.* He was entitled to the long term capital gain treatment as sought in the complaint filed below." (Emphasis added.)

The lower court in the case at bar concluded:

"The transaction here involved was a sale of a one-fourth interest in the said partnership, and the gain derived by the taxpayer herein as a result of said sale was derived from the sale of a capital asset, as defined by Section 117, Title 26, U.S.C.A."

■ It is now the overwhelming weight of authority and the law of this circuit that an interest in a partnership is a capital asset.[2] The interest of John Snow *in the partnership* (as contrasted with partnership earnings) was held for more than six months and therefore qualifies for capital gains treatment under Section 117 of the Internal Revenue Code.

■■ However, it is not decisive of the issue here presented to find that the subject matter properly bears the capital asset label. It is a fundamental principle of federal tax law that you must regard any ordinary income derived from an income-producing capital asset as ordinary income. Consequently, the assignment of accrued ordinary income must be treated separately from the assignment of the capital asset which produced the income. This is not an exception to the rule that capital assets held for more than six months shall be given capital gains tax treatment. It is only when a capital asset appreciates in value and is subsequently sold, beyond the six months' period, that the gain realized may be given capital gains tax treatment under Section 117 of the Internal Revenue Code.

■ The general rule is that a right to receive ordinary income, produced by a capital asset, is not transmuted into a capital asset by the sale or assignment of the capital asset together with the right to receive the ordinary income. We believe that the statutory provisions referred to above dealing with the taxation of partner's income control the disposi-

2. Stigenbaur v. United States, 9 Cir., 115 F.2d 283; Hatch's Estate v. C. I. R., 9 Cir., 198 F.2d 26.

tion of this case. In addition, we see no logical reason why ordinary income from an interest in a partnership should receive different tax treatment than income from any other capital asset.

Fisher v. Commissioner, 6 Cir., 209 F.2d 513, certiorari denied 1954, 347 U.S. 1014, 74 S.Ct. 868, 98 L.Ed. 1136, involved a bona fide sale of notes held for more than six months for a greater sum than their face value, since the sale price of the notes was made to reflect the interest due thereon. The taxpayer treated the entire transfer as that of an indivisible sale of a capital asset. The court of appeals affirmed the Tax Court, 19 T.C. 384, in holding that the taxpayer must treat his right to ordinary income (interest due on the notes) as ordinary income and not capital gain and that in a tax sense it was unimportant that the interest due on the notes (ordinary income) was later collected by the purchaser of the capital asset (notes) rather than being paid to the seller of the notes, since the purchaser of the capital asset in effect paid the interest to the taxpayer when he paid more for the notes than their face value.

In the Fisher case the court pointed out that the fundamental error of the taxpayer was his failure to recognize that gain realized upon the sale of a capital asset which has appreciated in value is capital gain; whereas, gain realized by way of income from the capital asset is ordinary income.

The Fisher case reviews the touchstone cases in this field of taxation, including: Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75; Hort v. Commissioner, 313 U.S. 28, 61 S.Ct. 757, 85 L.Ed. 1168; and Rhodes' Estate v. Commissioner, 6 Cir., 131 F.2d 50. We believe that these cases support the conclusion we reach.[3] It has been the rule since Lucas v. Earl, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731, that income tax can-

---

**3.** Fisher v. C. I. R., 6 Cir., 209 F.2d 513, 514–515:

"While no exact precedents have been cited and none are found, principles governing the characteristics of income are well understood and have been developed by many cases. In Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75, the question presented was whether one who is presently entitled to receive income and who is taxable only on receipt of payment can escape taxation by giving away his right thereto in advance of actual payment. The answer was in the negative. In Hort v. Commissioner, 313 U.S. 28, 61 S.Ct. 757, 85 L.Ed. 1168, the taxpayer acquired by inheritance real estate subject to a lease. It was there held that a lump-sum payment by the lessee for cancellation of the lease 'was clearly a substitute for the rent reserved in the lease' and, thus, taxable as ordinary income to the recipient. In Rhodes' Estate v. Commissioner, 6 Cir., 131 F.2d 50, a sale of dividend rights prior to the time they were payable was held to be ordinary income and not capital gain. * * *

"A brief analysis of the petitioner's position will perhaps clarify our view. The petitioner kept his books and made his returns upon a cash receipts basis. Had he chosen the accrual method, the interest payments upon the notes would have been income to him at the time they became due. The law, of course, permits him to adopt either method but the cash receipts basis does not change the character of what he receives from income to capital gain—it merely postpones its taxability until realization. Floyd v. Scofield, 5 Cir., 193 F.2d 594. It was said in the Horst case, supra: 'But the rule that income is not taxable until realized has never been taken to mean that the taxpayer, even on the cash receipts basis, who has fully enjoyed the benefit of the economic gain represented by his right to receive income can escape taxation because he has not himself received payment of it from his obligor.' [311 U.S. 112, 61 S.Ct. 147] The petitioner received substantially all of his defaulted interest when he sold his notes to Prime, discounted for trading purposes, and it was, in the light of the Horst case, unimportant that he received it not from the Florida corporation but from the purchaser of the notes. As was there further said: 'The power to dispose of income is the equivalent of ownership of it. The exercise of that power to procure the payment of income to another is the enjoyment and hence the realization of the income by him who exercises it. * * * The dominant purpose of the revenue laws is the taxation of income to those who earn or otherwise create the right to receive it and enjoy the benefit of it when paid.' "

not be escaped by a tax payer's assigning to another *the right to receive ordinary income.* In the case at bar the partnership had approximately $390,000 of *ordinary income* for the fiscal year ending on February 28, 1945. It is not contested that *appellees' share of the partnership's ordinary income* for the fiscal year ending February 28, 1945, was something over $97,000. Since a partnership is not a tax-paying entity, the partners pay tax upon their share of the partnership earnings, 26 U.S.C. § 181.

The Tax Court has decided the precise issue here presented on several occasions prior to the Meyer case. All of these cases to which our attention has been directed decided the issue contrary to appellees' contention here, and contrary to the Meyer decision. We believe that these prior cases were correctly reasoned. Some of the cases with which we are in accord and which decided the specific issue here in question are:

Karsch v. Commissioner, 8 T.C. 1327.

Goodman v. Commissioner, 1950 P–H T.C. Memorandum Decisions, par. 52,-222 which holds that Section 182 requires that a partner report his share of partnership ordinary income as his personal ordinary income whether he received it or not. This requirement is not altered by a sale of *a partnership interest* where the books of the partnership show accrued profits credited to the partner selling his interest in the partnership.

Gray v. Commissioner, 1952 P–H T.C. Memorandum Decisions, par. 52,002: "It seems well settled that a partner must return for taxation his portion of the undistributed profits of a partnership whether he ever actually receives these profits or not. [Citations.] In the Karsch case we said:

" 'We have been referred to no authority indicating that the mere sale of a partnership interest converts a partner's distributive share in past earnings upon which no tax has been paid into a capital item or relieves

him from the necessity of paying a tax thereon as ordinary income.' "

Bell v. Commissioner, 1953 P–H T.C. Memorandum Decisions, par. 53,135:

" * * * The *gain* or loss *from the sale of the partnership interest is a matter that calls for separate treatment and is not to be confused with the proper reporting of the income earned from the operation of the partnership.*" (Emphasis added.)

The latest determination by the Tax Court of the issue presented to this court is to be found in Johnson v. Commissioner, 21 T.C. 733, 738:

"It is by now well settled that a withdrawing partner is chargeable with ordinary income on his share of the partnership profits, whether currently distributed or not, up to the time of his withdrawal. [Citations.] This is so notwithstanding that he sells his interest to the continuing partner."

In Le Sage v. Commissioner, 5 Cir., 173 F.2d 826, the court also faced this issue and decided that any part of the sale price of an interest in a partnership which reflected *partnership income* must be regarded as ordinary income of a partner and cannot be given capital gains treatment.

The appellants have urged, and we agree, that the lower court erred in refusing to hold that a portion of the receipts (i. e., the amount equal to John Snow's share of the partnership's net earnings for the partnership year from March 1, 1944, to February 28, 1945) should be taxed as ordinary income under Sections 22 and 182 of the Internal Revenue Code, 26 U.S.C. §§ 22, 182, rather than as capital gain under Section 117.

The judgment of the lower court is therefore reversed and the cause remanded for further proceedings not inconsistent with the views here expressed.