HYMAN MYERS AND DOROTHY MYERS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 84117. Filed August 16, 1962.

*H. Z. Mendow, Esq.*, for the petitioners.
*R. A. Roberts, Esq.*, for the respondent.

SCOTT, *Judge:* Respondent determined deficiencies in petitioners' income tax for the taxable period January 1, 1955, to June 30, 1955, and the taxable year ended June 30, 1956, in the amounts of $14,088.49 and $488.81, respectively, and an addition to the tax under the provisions of section 6654 of the Internal Revenue Code of 1954 for the taxable period January 1, 1955, to June 30, 1955, in the amount of $80.45.

The issues for decision are:

(1) Whether petitioners received additional income of $22,314.72 as the distributive share of Hyman Myers of partnership income from Lakeland Door Co. for the taxable period January 1 to June 30, 1955.

(2) Whether petitioners are entitled to a business bad debt deduction of $1,000 in the taxable period January 1 to June 30, 1955, arising from a loan made by Hyman Myers.

(3) Whether petitioners are entitled to deduct $1,825.27 or any portion thereof as travel expense for business purposes of Hyman Myers on a trip to Hawaii during the period January 1 to June 30, 1955, and the amount of $2,506.14 or any portion thereof as travel expense for business purposes of Hyman Myers on a trip to South America in the taxable year ended June 30, 1956.

FINDINGS OF FACT.

Some of the facts have been stipulated and are found accordingly.

Petitioners Hyman and Dorothy Myers are husband and wife who during the years here involved resided in Minneapolis, Minnesota. They filed joint Federal income tax returns for the taxable period January 1, 1955, to June 30, 1955, and for the taxable year ended June 30, 1956, with the district director of internal revenue for the district of Minnesota.

Hyman Myers (hereinafter referred to as petitioner) at all times material hereto prior to March 31, 1955, owned a one-third interest in Lakeland Door Co., a partnership. This partnership kept its books and filed its partnership returns of income on an accrual method of accounting and for fiscal years ending September 30.

During the period October 1, 1954, through March 31, 1955, the partnership earned and accrued on its books and records a net profit of $113,041.80 which was allocated on the partnership books one-third, or $37,680.60, to petitioner, and one-third to each of the remaining partners. Petitioner's capital account after addition thereto of this allocation of profits for the period October 1, 1954, through March 31, 1955, and a reduction by withdrawals by petitioner during this period of $15,365.88, showed a balance of $58,065.23.

An agreement was entered into on May 14, 1955, by Hyman Myers and the two persons who had been in partnership with him in the Lakeland Door. Co. which provided in part as follows:

Agreement made and entered into this 14th day of May, 1955, by and between HYMAN MYERS, as retiring partner of Lakeland Door Company, a partnership consisting of Hyman Myers, Abe S. Bloom and Jerome F. Bloom, first party, and ABE S. BLOOM and JEROME F. BLOOM, as continuing partners d.b.a. Lakeland Door Co., second party, effective March 31, 1955.

*WITNESSETH:*

WHEREAS, First party is retiring from said partnership, and

WHEREAS, the partnership as continuing is agreeable to liquidate the interest of said first party by making payments as hereinafter defined and agreed;

Now, THEREFORE, THIS AGREEMENT:

I. First party hereby accepts in exchange for his interest in the property of Lakeland Door Company the sum of $58,065.23 and in consideration of the second party hereby agreeing to pay first party, his heirs, administrators, executors and assigns, said sum on the following terms, hereby assigns said interest to second party:

A. $1,578.30 in cash, receipt of which is hereby acknowledged.

B. $5,000.00 in cash on or before 30 days from date hereof.

C. $51,486.93 in installments of $850.00, or more, beginning on or before May 15, 1955, and continuing on or before the 15th day of each month until said $51,486.93 is paid in full.

\* \* \* \* \* \* \*

VI. Second party hereby assume[s] and agree[s] to pay the first party's share of the liabilities of the partnership known as Lakeland Door Company as

of March 31, 1955, and agree[s] to indemnify and save first party harmless on account of the same.

Sometime prior to June 30, 1955, petitioner loaned the amount of $1,000 to another person to be used by the other person for the purchase of steel. The steel was not purchased and petitioner has never been repaid the $1,000.

Petitioner from sometime in the early thirties up to the present has had timber and mining interests in Canada. During the early 1940's he was president of two Canadian companies engaged in mining activities. During the time he was in the Lakeland Door Co. partnership, he was engaged to some extent in timber development and owning of mining claims in Canada.

During the taxable period January 1, 1955, through June 30, 1955, petitioner, accompanied by his wife, traveled to Los Angeles, California, and Honolulu, Hawaii. Petitioner and his wife went by airplane from Minneapolis to Los Angeles where they spent 4 days and then proceeded by boat to Honolulu, Hawaii, a trip which took approximately 4½ days. They spent the next 26 to 31 days in hotels in Hawaii and returned by airplane to Los Angeles. The following amounts were spent by petitioner on his own behalf for the purposes indicated in connection with this trip.

| | |
|---|---|
| Transportation to Los Angeles and return | $215.35 |
| Transportation from Honolulu to Los Angeles | 137.50 |
| Hotel accommodations | 384.92 |
| Baggage | 4.35 |
| Monkeypod wood | 84.80 |
| Meals in Los Angeles and Hawaii | 350.00 |
| Express baggage | 25.00 |
| Transportation from Los Angeles to Hawaii | 304.75 |
| | 1,506.67 |

Sometime in 1954 a man named Boris Horn (hereinafter referred to as Horn) of Woods of Hawaii, came to see petitioner at Lakeland Door Co. because of his interest in the methods of manufacturing plywood and veneer. Horn told petitioner that he was the largest operator of monkeypod timber. Monkeypod is a tree that grows in Hawaii. Petitioner stated to Horn that he was working in timber in Canada and asked if monkeypod logs and the lumber therefrom were available, and if so, would Horn sell the product to him. Horn informed him that if he would come to Hawaii he would make arrangements for him to see the logs and the growing timber and would be able to ship some logs to the United States.

When petitioner arrived in Honolulu, he found that Horn was not in the city but in one of the islands. Horn did not return to Honolulu, and petitioner did not see him for 10 days after petitioner's arrival in Honolulu. When Horn returned to Honolulu, petitioner

made trips to Horn's plants. Petitioner went to Kauai, Hawaii, to look at some timber and Horn took him around Honolulu and showed him timber growing at different places. Horn stated that he would get petitioner some logs for export to the mainland. Petitioner never actually received any monkeypod logs.

During the period January 31, 1956, through April 26, 1956, petitioner and his wife made a trip to Miami, Florida, and various South American countries. The cost of the entire trip including transportation, hotel accommodations, meals, taxis, tips, and incidental items for both petitioner and his wife was $4,316.83. Approximately one-half of this amount, $2,158.41, represented expenses of petitioner, and the other half, expenses of his wife. The trip included stops of varying lengths from 1 to 12 days in Miami, Florida; San Juan, Puerto Rico; Trinidad, Port of Spain; Rio de Janeiro, Brazil; Sao Paulo, Brazil; Buenos Aires, Argentina; Santiago, Chile; Lima, Peru; Panama City, Panama; Curacao, Dutch Netherlands; Ciudad Trujillo, Dominican Republic; and Haiti, West Indies. Certain of the places visited were places where petitioner and his wife went entirely for their personal pleasure and at least 45 days of the trip were used in this manner. In some places in the Caribbean and South America petitioner contacted persons engaged in the timber business with a view to interesting them in the use of large sawmill equipment which he had seen located in the fall of 1954 in a closed Canadian plant which he felt was being offered for sale at a price considerably less than its value but more than he, individually, could finance. He attempted to interest persons with whom he talked in South America in going into business with him and other Americans with this equipment from the closed Canadian plant but reached no final arrangement and continued to work toward developing such a business until sometime in 1957. During this trip petitioner concluded a transaction for the purchase of some ore property.

Petitioners, on their income tax return for the taxable period January 1, 1955, to June 30, 1955, reported withdrawals from Lakeland Door Co. in the amount of $15,365.88 as ordinary income and a capital gain from the sale of net worth in Lakeland Door Co. in the amount of $3,181.35. The reported capital gain was arrived at by subtracting from $58,065.23 the amount of $35,750.51 designated as "Adjusted Basis—Net Worth in Lakeland Door Company on October 1, 1954" and apportioning the resultant $22,314.72 amount stated to be "Capital Gain" to the 1955 year by applying 38.43 percent (the ratio of the computed gain of $22,314.72 to the $58,065.23) to the 1955 principal payment of $8,278.30. Petitioners, on their return, deducted business losses in the amount of $1,781, of which $1,100 was stated to have been due to the investment of this amount with another in a venture having to do with the buying and selling of steel

products, the funds of which had been dissipated by the other venturer without petitioner's being reimbursed or realizing any funds from such venture. Petitioners, on their return for the period January 1 to June 30, 1955, deducted the amount of $1,825.27 as expenses of a business trip to Hawaii and Los Angeles and on their return for the fiscal year ended June 30, 1956, deducted the amount of $2,506.14 as travel, South American business trip. On this return various items designated as travel expenses totaling $2,506.14 were listed with the explanation, "The total trip to South America covered a period of 91 days. The number of days attributable to business totaled 40 days. The expenses for this 40 day period are shown in Schedule above."

Respondent in his notice of deficiency increased petitioners' income for the period January 1 to June 30, 1955, by the amount of $22,314.72 designated as income from Lakeland Door Company, a partnership, the amount of $1,100 designated as business loss, and the amount of $1,825.27 designated as travel expense, with the following explanation:

It is held that your distributive share of partnership income from Lakeland Door Co., 3715 Oregon Avenue, Minneapolis, Minnesota, for your taxable year ended June 30, 1955, is $37,680.60, as determined under sections 702 and 706 of the Internal Revenue Code of 1954, instead of $15,365.88 as reported. Your taxable income is therefore increased in the amount of $22,314.72.

It is determined that the loss of $1,100.00 claimed on the return as a business loss is a non-business bad debt to the extent of $1,000.00 and it is allowed as a short-term capital loss taken into account in item (d) below. The amount claimed on the return as a business loss is disallowed.

The deduction of $1,825.27 claimed for alleged travel expense has been disallowed because it has not been established that the amount was expended for the purpose designated or that it represents a proper deduction under Section 162 of the Internal Revenue Code of 1954, or any other section of the Code.

Respondent also reduced the capital gain as reported by petitioners by the amount of $3,181.35 shown on petitioners' return as capital gain on the sale of interest in Lakeland Door Company, a partnership, and allowed as a short-term capital loss a nonbusiness bad debt in the amount of $1,000. For the fiscal year ended June 30, 1956, respondent disallowed the $2,506.14 claimed by petitioner as business travel expense with the following explanation:

The deduction of $2,506.14 claimed for alleged travel expense has been disallowed because it has not been established that the amount was expended for the purpose designated or that it represents a proper deduction under Section 162 of the Internal Revenue Code of 1954, or any other section of the Code.

OPINION.

All of the facts with respect to the transaction between petitioner and Lakeland Door Co. are stipulated.[1] From the stipulated facts it

---

[1] The only testimony in the record in regard to this transaction is the following testimony by petitioner:

is clear that Lakeland Door Co. had a net profit of $113,041.80 for the period October 1, 1954, through March 31, 1955, computed on an accrual basis of accounting on which basis it kept its records and that the $58,065.23 shown in the agreement as being accepted by petitioner in exchange for his partnership interest, included his one-third of this net profit, or $37,680.60, less the $15,365.88 he had withdrawn during the period October 1, 1954, through March 31, 1955.[2] Petitioner contends that the agreement made by him as retiring partner with the continuing partners constituted a sale of his entire partnership interest which was a capital asset and that his proportionate share of the partnership profits for the period October 1, 1954, through March 31, 1955, which he had not withdrawn, was a part of the assets of the partnership in which he sold his interest and not distributable net profits of the partnership taxable to him as ordinary income.

Section 736 of the Internal Revenue Code of 1954 deals with payments to a retiring partner, but neither that section nor sections 702 and 706 of the Internal Revenue Code of 1954 referred to by respondent in his notice of deficiency is applicable in the instant case under the provisions of section 771 dealing with the effective date of the partnership provisions of the Internal Revenue Code of 1954 (Subchapter K—Partners and Partnerships)[3] since the taxable year of the partnership here involved began on October 1, 1954. In numerous

"Q. When you sold out to Lakeland, your interest in Lakeland Door, you sold it under the written agreement that is here in the exhibits here, you had a written contract?
A. Yes, yes.
Q. And that contract covers the entire transaction?
A. Yes."

[2] The agreement of May 14, 1955, also carried an agreement by petitioner not to compete directly or indirectly with the continuing partnership in the manufacture of doors, veneer, and plywood for a period of 5 years within a radius of 300 miles of Minneapolis, Minnesota, and an agreement that in further consideration of petitioner's retirement the continuing partners agree to pay to him, his agents, successors, executors, administrators, or assigns a guaranteed income payment of $102,013.07, the payments to be made monthly on a formula set forth in the agreement. This portion of the agreement was not included in the findings of fact and has not been discussed since it is not regarded as bearing on the issue here involved.

[3] SEC. 771. EFFECTIVE DATE.
(a) GENERAL RULE.—
(1) TAXABLE YEARS BEGINNING AFTER DECEMBER 31, 1954.—Except as provided in subsection (b), this subchapter shall apply with respect to—
(A) any partnership taxable year beginning after December 31, 1954, and
(B) any part of a partner's taxable year falling within such partnership taxable year.
(2) APPLICATION OF PRIOR PROVISIONS.—Except as provided in subsection (b), sections 113(a)(13), 181 to 191 (inclusive), and 3797(a)(2) of the Internal Revenue Code of 1939 shall apply with respect to—
(A) any partnership taxable year beginning before January 1, 1955, and
(B) any part of a partner's taxable year falling within such partnership taxable year.
(b) SPECIAL RULES.—
(1) ADOPTION OF TAXABLE YEAR.—Section 706(b) (relating to the adoption of a taxable year by a partnership or partner) shall apply to—
(A) any partnership which adopts, or changes to, a taxable year beginning after April 1, 1954, and

cases governed by the provisions of the Internal Revenue Code of 1939, this Court has held under facts similar to those here involved that where a partner sells his partnership interest to the other members of the partnership, such sale does not effect a transmutation of his distributable share of the partnership net income to the date of sale from ordinary income into capital with respect to which capital gain or loss may be computed. *Chris J. Sherlock*, 34 T.C. 522, 525–526 (1960), affd. 294 F. 2d 863 (C.A. 5, 1961), certiorari denied 369 U.S. 802, and cases there cited.

Petitioner in support of his position relies primarily on *United States* v. *Donoho*, 275 F. 2d 489 (C.A. 8, 1960), and *United States* v. *Shapiro*, 178 F. 2d 459 (C.A. 8, 1949). As we noted in *Chris J. Sherlock*, *supra*, *United States* v. *Donoho*, *supra*, appears to adopt a view contrary to that of the Courts of Appeals of five other circuits. In any event both *United States* v. *Donoho*, *supra*, and *United States* v. *Shapiro*, *supra*, are distinguishable from the instant case. Both of these cases dealt with unrealized receivables of a cash basis partnership. In *United States* v. *Donoho*, *supra*, the court referred to the change made by the provisions of the Internal Revenue Code of 1954 with respect to unrealized receivables with the statement, "While the gain from the sale of a partnership interest continues to be recognized to the transferor partner as a capital gain, unrealized receivables are for the first time expressly excepted, I.R.C. 1954, 26 U.S.C. sec. 1221." (Sec. 751(a), I.R.C. 1954.)

(B), any partner who changes to a taxable year beginning after April 1, 1954. For the purpose of applying this paragraph, section 708 (relating to the continuation of a partnership) shall be effective for taxable years beginning after April 1, 1954.

(2) PROPERTY DISTRIBUTED BY A PARTNERSHIP.—Section 735(a) (relating to the character of gain or loss on the disposition of property distributed by a partnership) shall apply only to property distributed by a partnership after March 9, 1954.

(3) UNREALIZED RECEIVABLES AND INVENTORY ITEMS.—Section 751 (relating to unrealized receivables and inventory items) shall apply with respect to gain or loss to a seller, distributee, or partnership in the case of a sale, exchange, or distribution occurring after March 9, 1954. For the purpose of applying this paragraph in the case of a taxable year beginning before January 1, 1955, the other sections of this subchapter shall be applicable to the extent provided by regulations prescribed by the Secretary or his delegate.

(4) PARTNER RECEIVING INCOME IN RESPECT OF DECEDENT.—Section 753 (relating to income in respect of a decedent) shall apply only in the case of payments made with respect to decedents dying after December 31, 1954.

(c) OPTIONAL TREATMENT OF CERTAIN DISTRIBUTIONS.—In the case of a partnership taxable year beginning after December 31, 1953, and before January 1, 1955, a partnership may elect, under regulations prescribed by the Secretary or his delegate, with respect to distributions made during such year to any partner, other than in liquidation of the partner's interest, to apply the rules in sections 731, 732(a), (c), and (e), 733, 735, and 751(b), (c), and (d) (and, to the extent applicable, the rules provided in sections 705, 752, and 761(d)). If a partnership so elects, such rules shall be effective for the partnership and all members of such partnership with respect to such distributions.

Respondent in his reply brief recognizes that sections 702 and 706 of the Internal Revenue Code of 1954 are not applicable in the instant case but states that these sections are substantially similar, insofar as here material, to sections 182, 183, and 188 of the Internal Revenue Code of 1939, except as to section 706(c) of the 1954 Code which respondent states is, insofar as here material, a codification of the prior case law on the applicable subject.

The partnership in the instant case was on an accrual basis of accounting and its net profits for the period October 1, 1954, to March 31, 1955, computed on this basis were $113,041.80. Therefore, the issue here is not whether accounts receivable of a cash basis partnership which will become income when collected should be treated upon the sale of a partnership interest as an asset different from other partnership assets with the amount attributable thereto from proceeds of the sale taxable to the retiring partner as ordinary income, but is whether accrued net profits to the date of a partner's retirement should be includible in his income where at the date of his retirement the taxable year of the partnership had not ended. The only case referred to in *United States* v. *Donoho, supra,* which dealt with accrued net profits of an accrual basis partnership is *Meyer* v. *United States,* 213 F. 2d 278 (C.A. 7, 1954). Cf. *Hulbert* v. *Commissioner,* 227 F. 2d 399 (C.A. 7, 1955), affirming a Memorandum Opinion of this Court.

Petitioner in the alternative contends that at worst his sale of his share of the partnership's undistributed profits was an installment sale taxable only on that basis. This argument overlooks the fact that the undistributed profits here involved represent partnership net profits which under section 182 of the Internal Revenue Code of 1939 are includible in a partner's net income whether or not distribution is made to him. When petitioner entered into the May 14, 1955, agreement with the other two partners of Lakeland Door Co., the amount agreed upon to be paid to him was to the extent of his unwithdrawn portion of the net profits of the partnership in substitution for his distributable share of such accrued net profits, and the fact of such substitution does not change the taxable nature of the ordinary income. Cf. *Commissioner* v. *P. G. Lake, Inc.,* 356 U.S. 260 (1958).

The only evidence with respect to the claimed $1,100 business loss disallowed by respondent is that $1,000 thereof represented a note for a loan made by petitioner to a third party to buy some steel, that the steel was not bought and the note not paid. This evidence in no way indicates whether the purchase of the steel was in any way related to any business activity of petitioner, and for failure of proof on the part of petitioner, respondent's disallowance of the $1,100 claimed business loss and his determination that $1,000 thereof represented a nonbusiness bad debt is sustained.

The testimony with respect to petitioner's trip to Los Angeles and Hawaii shows that petitioner did look at certain monkeypod logs and timber while in Hawaii. However, the evidence does not support a finding that this was the reason for petitioner's trip. Petitioner testified that he did not remember whether he contacted Horn, the man who had discussed the monkeypod timber with him, before he went to Hawaii, but that upon his arrival in Honolulu, Horn was away and

666

it was 10 days before Horn returned and petitioner contacted him. Petitioner made some vague reference in his testimony to seeing someone in Los Angeles in a business connection, but the testimony is too vague and indefinite to support a finding of any business purpose for petitioner's spending 4 days in Los Angeles. The record not only fails to establish that petitioner's trip was for a business purpose but indicates that any business purpose was incidental to other reasons for the trip. There is no evidence in the record to indicate what amount, if any, petitioner expended while in Hawaii in connection with his trip to look at the monkeypod logs or even how much time he spent in this undertaking. The evidence does not show that petitioner's interest in monkeypod logs was related to any business in which he was currently engaged as distinguished from a consideration of possibly going into some business in which these logs might be used. Respondent's disallowance of petitioner's claimed deduction of travel expenses on his 1955 trip to Hawaii is sustained because of petitioner's failure of proof.

Petitioner in his testimony admitted that 45 out of the 86 days spent on his trip to South America were devoted entirely to his personal interests and pursuits. There is no evidence in the record to show how much of the remaining 41 days was devoted to business activities or any detail as to the business discussions undertaken. Petitioner testified that on the South American trip he purchased an ore property, but there is no evidence to show the length of time consumed by this transaction. It appears from the evidence that any other transactions of a business nature that petitioner had while on his South American trip were in connection with an attempt to promote and organize a new business and that at the close of his fiscal year ended June 30, 1956, petitioner was still attempting to organize this business undertaking. Expenditures for the purpose of organizing or developing a new business relationship constitute nondeductible capital expenditures. *Morton Frank*, 20 T.C. 511 (1953). Petitioner has failed to prove that he is entitled to any business expense deduction in his fiscal year 1956 because of his expenditures in that year on a South American trip.

*Decision will be entered for the respondent.*