Bruce W. HULBERT, Petitioner,

v.

COMMISSIONER OF INTERNAL
REVENUE, Respondent.

Charles H. EDWARDS, Petitioner,

v.

COMMISSIONER OF INTERNAL
REVENUE, Respondent.

Nos. 11353, 11354.

United States Court of Appeals
Seventh Circuit.

Nov. 22, 1955.

Robert Anderson Littleton, Washington, D. C., for petitioners.

H. Brian Holland, Asst. Atty. Gen., Marvin W. Weinstein, Atty., U. S. Dept. of Justice, Washington, D. C., for respondent.

Before LINDLEY, SWAIM and SCHNACKENBERG, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

Petitioners ask us to review[1] the decisions of the Tax Court holding that they are liable for deficiencies in individual income tax for the taxable year 1946, arsing from their alleged receipt of $91,220.94 as ordinary income in the transaction hereinafter referred to.

Century Biscuit Company[2] was a copartnership consisting of Charles H. Edwards and his wife and Bruce W. Hulbert and his wife, each having a one fourth interest.

We now set forth the essential facts.[3]

Following protracted negotiations, Century, on *March* 26, 1946, entered into a written contract for the sale of the partnership business, including a leasehold of its business premises, to Kungsholm Baking Company.[4] This contract was in the form of a letter addressed by Kungsholm to the copartners of Century, accepted on its face by the four partners. The contract showed that the sale was made upon the basis of the *January* 26, 1946 balance sheet of the firm. It provided that the firm "shall operate" the business for the benefit of the buyers from "January 26, 1946" to the date of consummation of the agreement, which was fixed by the agreement as "on or before June 26, 1946" but not thereafter.

The contract designated this period as the "Buyer's Business Period." It further provided that one half of the net profits of the business from January 26, 1946 to the date of consummation of the agreement, after deducting federal income taxes computed on the profits at the rate of 38 per cent and Indiana gross income taxes, would belong to Kungsholm. The other half of said net profits would constitute a part of the purchase price of the above described leasehold, and would be paid by Kungsholm to Century.

The agreement related that Kungsholm intended to sell stock through underwriters for the purpose of raising the money to consummate the purchase, that the underwriting agreement was contingent upon registration and qualification of the stock by the Securities and Exchange Commission of the United States and under the Blue Sky laws of the various states, and that it was anticipated that this would require about 90 days' time. The agreement provided that, if for any reason such stock was not sold or the underwriting not carried into effect, Century would "retain as liquidated damages and not as a penalty the sum of $7,500 deposited with" it by Kungsholm, otherwise said sum to be credited on the purchase price.

By the agreement of March 26, 1946 in paragraph 10 the sellers represented that "since January 26, 1946 no action has been taken outside the ordinary course" of *their* business. It was also agreed "that during the period between the date hereof and the date of closing, you" (sellers) "will operate your business and maintain and care for all assets being sold to us" (Kungsholm) "in a business like manner," etc. Paragraph 11 of said contract said "It is agreed that in the event the sale contemplated by this agreement shall not be consummated, we" (Kungsholm) "shall not be responsible for any losses resulting dur-

---

1. Pursuant to § 1141(a) of the Internal Revenue Code of 1939, as amended, 26 U. S.C.A. § 1141(a).

2. Hereinafter referred to as "Century."

3. A more detailed statement of the facts will be found in 12 T.C.M. 1443, C.C.H. Dec. 20,056.

4. Hereinafter referred to as "Kungsholm."

ing the Buyer's Business Period, and you" (sellers) "shall retain the profits resulting during said period."

The Securities and Exchange Commission did not approve Kungsholm's stock issue. Nevertheless its purchase of the firm business was consummated on June 26, 1946 by a bill of sale, for which Kungsholm issued a check payable to the partners in the amount of $339,755.08 and gave them its note for $100,000 due on or before February 15, 1947. During the Buyer's Business Period the partners conducted the business and, upon consummation of the sale, partnership withdrawals during that period and direct payment by Kungsholm for other costs incidental to the sale were credited against the purchase price.

Petitioners in this court submit that, to the extent that the decision(s) of the Tax Court imposes a tax liability against petitioners on $91,220.94 as "ordinary income" for the year 1946, it is erroneous and should be reversed.

■ The business operated by the sellers during the Buyer's Business Period and the net profits [5] accruing therefrom were the business and the profits of the sellers. The fact that their agreement required them to deliver that business and those profits to Kungsholm does not detract from the fact that, by use of their own property, the sellers as a firm made profits and that as a matter of law the partners became liable for income taxes on such profits in the year when they accrued.

■ In Heiner v. Mellon, 304 U.S. 271, at page 281, 58 S.Ct. 926, at page 931, 82 L.Ed. 1337, speaking of income tax under § 218(a) of the Revenue Act of 1918, the court said:

"The tax is thus imposed upon the partner's proportionate share of the net income of the partnership, and the fact that it may not be currently distributable, whether by agreement of the parties or by operation of law, is not material."

To the same effect see Harriss v. Commissioner of Internal Revenue, 2 Cir., 143 F.2d 279, 281; Ruprecht v. Commissioner of Internal Revenue, 5 Cir., 39 F.2d 458, 459 and 47 C.J.S., Internal Revenue, § 116, p. 246. In Scherf v. Commissioner of Internal Revenue, 5 Cir., 161 F.2d 495, at page 497, the court said:

"Each partner as an individual pays taxes on his distributive share of the net income from the business whether distributed or not."

Such share is returnable as ordinary income. Johnston v. Commissioner of Internal Revenue, 2 Cir., 86 F.2d 732, 734.

If losses had been sustained, under the general law of partnership the partners would have been chargeable pro rata with such losses, and paragraph 11 of the agreement is not inconsistent with this rule of law. For two reasons, it was to the self-interest of the partners to so operate the business during the period in question that it would profit. First, as a matter of law that profit belonged to them (although they had contracted to pay part of it to Kungsholm). Secondly, losses incurred would fall upon them personally, and also might cause Kungsholm to abandon the entire transaction, which was obviously of pecuniary value to the partners.

■ By their contract, the Century partners undertook to dispose of the income of the partnership during the Buyer's Business Period. The power to dispose of income is the equivalent of ownership of it and the exercise of the power to procure its payment to another is within the reach of the statute [6] taxing income "'derived from any source whatever.'" Harrison v. Schaffner, 312 U.S. 579, 580, 61 S.Ct. 759, 760, 85 L.Ed. 1055. To the same effect are Lucas v. Earl, 281 U.S. 111, 114, 50 S.Ct. 241, 74 L.Ed. 731; Galt v. Commissioner of Internal Revenue, 7 Cir., 216 F.2d 41, 46 and 47, and Pleason v. Commissioner of Internal Revenue, 7 Cir., 226 F.2d 732.

---

5. $91,220.94.

6. § 22(a) Internal Revenue Code of 1939, as amended, 26 U.S.C.A. § 22(a).

For the reasons above set forth, we affirm the decisions of the Tax Court.

LINDLEY, Circuit Judge (dissenting).

I think the $91,220.94 treated by the Tax Court and by the majority here as "ordinary income" of the taxpayers, was, under the contract of the parties, the income of Kungsholm, the purchaser, and not that of the vendors. It seems clear to me that the only tax liability incurred by the partners was that arising from their capital gain in their sale of assets. This conclusion is impelled by our decisions in Meyer v. United States, 7 Cir., 213 F.2d 278, and Swiren v. Com'r, 7 Cir., 183 F.2d 656, the reasoning of which I adhere to, and believe to be applicable to and decisive of this case.

I would reverse.