**Barbara B. DONOHO, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

Civ. No. 6-57-97.

United States District Court
D. Minnesota,
Sixth Division.

Dec. 24, 1958.

**680**

Field, Arvesen & Donoho, Fergus Falls, Minn., by Cyrus A. Field, Fergus Falls, Minn., for plaintiff.

Charles K. Rice, Asst. Atty. Gen., James P. Garland, Lyle M. Turner and Charles H. Magnuson, Attys., Dept. of Justice, Washington, D. C., and Fallon Kelly, U. S. Atty., So. St. Paul, Minn., for defendant.

DONOVAN, District Judge.

Plaintiff brings this suit to recover an allegedly erroneous assessment of income taxes in the total amount of $3,490.44 with interest. Said sum was collected by defendant for the taxable period May 10, 1951, through December 31, 1951, and for the year 1952. This case has to do only with the years 1951 and 1952.

Plaintiff is the transferee of the estate of her father, Dr. W. L. Burnap, who, prior to his death on May 9, 1951, was associated with five other medical doctors as partners in the practice of their profession in the city of Fergus Falls, Minnesota, and carried on under the firm name of Fergus Falls Clinic. The Articles of Partnership [1] are in evidence, and will be referred to hereinafter as the Articles. The Articles provided for the continuation of the partnership in the event of death, retirement or disability of any of the partners. There is no dispute about the accuracy of the Articles which, in the foregoing respect, comply with the Statutory Law of Minnesota [2], providing that the partnership will not terminate on the death or retirement of a partner thereof, and that the share or interest of the deceased or retiring partner shall pass to and belong to the surviving partners, who in turn shall be obligated to return the value of the share to the retiring partner, or the representative of the estate of the deceased partner.

Paragraph 7 of the Articles provides for the method to be used by the surviving partners in determining the value of the share of the retiring or deceased partner. It reads as follows:

"7. The partnership shall continue at the will of the members, but it shall not ipso facto terminate on the death or the retirement for any reason of any member so long as two or more members remain in the firm.

"Retirement of a member of the firm shall result—

"(a) From his death.

"(b) From total disability existing for a period of six months.

"(c) From his voluntary act of retirement after having given six months notice of intention to retire.

---

**1.** Exhibit A. (Letters of the alphabet were used by plaintiff in the instant case, rather than numbers, to correspond with a previous marking of plaintiff's exhibits.)

**2.** 21 Minnesota Statutes Annotated, § 323.

"(d) From his reaching the age of sixty-five years. After reaching the age of sixty-five it is agreed that a salary basis of compensation shall be agreed upon from time to time for his continuation in practice if that is his desire.

"The surviving members shall pay to such retiring member or representative the value of the share of the retiring or deceased partner in the assets of the firm. For the purpose of laying a foundation for the determination of the value of such share the partners shall annually, or more often if they think advisable, appraise the assets, tangible and intangible, but in such case no value shall be ascribed to good will. If insurance is carried on the life of any member or members, the cash surrender value thereof shall be the value of such item for this purpose, unless the retirement is caused by death, in which case the net proceeds of the insurance, if any, on the life of the deceased member shall be the value thereof. Accounts receivable and customers' notes receivable shall be valued at 50% of their actual amount and proper adjustments shall be made for depreciation, distributions of earnings, and changes in the book accounts between the time of the declaration of value and the time of retirement, and a reasonable sum shall be added for work completed or partially completed, but not then billed. If the partners fail to appraise or declare a value of the assets of the firm within one year of the date of retirement of a partner, the value of the assets for the purpose hereof shall be determined by an appraisal thereof by a competent disinterested person selected by the parties in interest, or, if they are unable to agree upon such person, then by a person similarly qualified to be appointed by * * * [a] Judge of the District Court of the Seventh Judicial District of Minnesota upon the motion of any interested party on not less than eight days written notice to the other parties. The costs of the appraisal shall be borne equally by the sides of the controversy. The value of the share of the retiring partner so determined shall be paid by the surviving partners in the following manner:

"First: Net proceeds of any insurance on the life of a partner who has been retired by death shall, to the extent required, be paid over upon its receipt.

"Second: Not exceeding one-half of any reserves built up by the firm in the manner required to liquidate the share of such retiring partner be paid over as soon as reduced to cash; but if such reserves are invested in marketable securities or in the shares of a solvent operating building and loan association or associations, then not exceeding one-half in aggregate value of the securities and shares (the securities bring valued at their market and the shares at their face value, all as of the date of distribution) shall be turned over in kind to the extent necessary to liquidate the share of the retiring partner. It is contemplated that not to exceed two members of the firm will be likely to retire at or about the same time and consequently not to exceed one-half of the reserves shall be available to pay the share of any one retiring partner.

"Third: The balance of the determined value of the share of the retiring partner, if any, shall be paid by the surviving partners in not more than thirty-six equal monthly payments beginning the first day of the month succeeding the month in which the value is determined.

"When the retiring partner or, in the event of his death, the representative of his estate, has received the amounts hereinabove provided, he shall have no further interest or share in the business, earnings or assets of the firm, and such business,

682

assets and earnings shall belong to the surviving partners."

Following the death of Dr. Burnap, the surviving partners continued the business and prepared a statement of the partnership as of May 9, 1951, a copy of which is in evidence.[3]

There was no insurance on the life of Dr. Burnap from which to pay for the value of his share in the partnership. The reserve account in the partnership as of the date of Dr. Burnap's death was $29,301.80. This sum arose out of earnings in the prior years, and upon which income taxes had been paid in the year in which the moneys were earned.

Pursuant to method providing by the Articles, payments were made to the executors of the Burnap estate (after liquidating certain bonds) in the sum of $14,650.90, which was one-half of said reserve account, the balance of the determined value to be paid in not more than thirty-six equal monthly payments. These payments amounted to $778.78 in 1951. Thus the executors were paid an aggregate sum of $15,429.68 by the surviving partners in that year. In like manner, and for the calendar year 1952, said executors were paid $1,440 by said surviving partners.

The executors timely filed income tax returns for 1951[4], and 1952, which did not include as income any of the payments made by the surviving partners to the executors on the value of the share of Dr. Burnap in the partnership, that is, the sum of $19,073.08 (less a debt of Dr. Burnap to the partnership in the sum of $163.40).

A federal estate tax return was filed by the executors on Form 706. Included in the gross estate was the entire value of the share of Dr. Burnap in said partnership, and the tax was paid accordingly and as audited by defendant.

Plaintiff contends that a sale or transfer of a partner's share or interest in a Minnesota partnership is a capital transaction, and is not a sale or transfer of the individual assets of the partnership.[5]

Defendant contends that plaintiff, as transferee of the estate of W. L. Burnap, is liable for income taxes upon moneys received for the sale of said Burnap's interest in the Fergus Falls Clinic to the extent that such payment represents income earned by decedent prior to death.[6]

Defendant, by brief, says:

" * * * the plaintiff will contend that, inasmuch as a partnership interest is a capital asset, the purchase of Dr. Burnap's partnership interest by the remaining partners represented a sale of such partnership interest by the estate and that consequently no ordinary income was derived therefrom. * * *" [Citing a Seventh Circuit case in support of that reasoning.][7]

■ Study of the pleadings, file and evidence of the instant case impressed the Court that under the Uniform Partnership Act effective in Minnesota at all times herein (footnote 2, supra), a partnership interest is property distinct and separate from the partnership and its underlying assets, whatever they may be.[8] That, in effect, was the holding of the Eighth Circuit Court of Appeals in United States v. Shapiro, 178 F.2d 459, 460, 461, where Judge John B. Sanborn said:

"It is the position of the United States that the applicable tax law does not regard a partnership inter-

3. Exhibit B.

4. Covering period from the death of Dr. Burnap, May 9, 1951, through December 31, 1951.

5. 26 U.S.C.A. (I.R.C.1939), § 117. (Plaintiff claims the Internal Revenue Act of 1939 was in effect at the date of Dr. Burnap's death, as distinguished from analogous provisions of the Act of

1934). Uniform Partnership Act, see footnote 2, supra.

6. Defendant also relies on said Act of 1939.

7. Swiren v. Commissioner, 7 Cir., 183 F. 2d 656, certiorari denied 340 U.S. 912, 71 S.Ct. 293, 95 L.Ed. 659.

8. Id.

est as property; that therefore such an interest cannot be a capital asset under § 117(a) (1) of the Internal Revenue Code; that a partner is treated by the tax laws as a co-owner of partnership assets; that when a partner transfers all or part of his interest in the partnership, all that he has sold is his proportionate interest in some or all of the assets used in the partnership business; that gain or loss on the transfer of an interest in a partnership can be related only to the transferor's interest in the specific assets sold; that to the extent that a gain from the transfer is attributable to an interest in capital assets, it is taxable as a capital gain, but that to the extent that the gain is attributable to an interest in noncapital assets it is to be taxed as ordinary income; that the tax consequences of a sale of a partnership interest must be determined without reference to local rules of law relating to partnerships; that Congress intended that, so far as taxation is concerned, partners are to be regarded as being no different than other kinds of business associates who are common owners of business assets; that this is clearly indicated by § 3797(a) (2) of the Internal Revenue Code, 26 U.S.C.A. § 3797(a) (2); that other sections of the Internal Revenue Code deal with partners as co-owners of partnership assets, income and business, and give no recognition to a partnership as a taxable entity.

"The difficulty with the Government's position, which is not devoid of logic, is that it is contrary to the overwhelming weight of authority. [Citing cases.]

\* \* \* \* \* \*

"The denial, on October 10, 1949, of the petitions for certiorari in the cases of Commissioner of Internal Revenue v. Smith, 5 Cir., 173 F.2d 470, and Long v. Commissioner, 5 Cir., 173 F.2d 471, indicates to us that the Supreme Court is not disposed to disturb the rulings of the Courts of Appeals of the Second, Third, Fifth, and Sixth Circuits and of the Tax Court to the effect that the sale of an interest in a partnership is the sale of a capital asset, regardless of the nature of the partnership properties. Uniformity in the construction of tax laws is important. \* \* \* " [9]

This Court is satisfied that the holding of the Swiren case from the neighboring Seventh Circuit, applying the principles of United States v. Shapiro, supra, is still the law applicable there and here.

█ In the administration of the taxing statute, uniformity of decision among the Circuit Courts is desirable, and unless demonstrably wrong, absent a case in point from the Eighth Circuit, the Swiren case should be adhered to.[10]

█ In my opinion the interest of the deceased partner Burnap was and is of itself a "capital asset", regardless of its nature.

Plaintiff may submit findings of fact, conclusions of law, order for and form of judgment.

It is so ordered.

Defendant may have an exception.

---

9. Id. See also:
    Commissioner v. Smith, 5 Cir., 173 F. 2d 470; Long v. Commissioner, 5 Cir., 173 F.2d 471; Meyer v. United States, 7 Cir., 213 F.2d 278.
    But compare:
    LeSage v. Commissioner, 5 Cir., 173 F.2d 826; United States v. Snow, 9 Cir., 223 F.2d 103; Leff v. Commissioner, 2 Cir., 235 F.2d 439; Trousdale v. Commissioner, 9 Cir., 219 F.2d 563; Hulbert v. Commissioner, 7 Cir., 227 F. 2d 399; Doyle v. Commissioner, 4 Cir., 102 F.2d 86.
    Contra:
    Tunnell v. United States, D.C.Del.1957, 148 F.Supp. 689, affirmed 3 Cir., 259 F. 2d 916.

10. Chicago, St. Paul, Minneapolis & Omaha Ry. Co. v. Kelm, D.C.Minn., 104 F. Supp. 745, 747, 748; affirmed 8 Cir., 206 F.2d 831.