Walter L. BERRY and Clover G. Berry, Appellants,

v.

UNITED STATES of America, Appellee.

No. 13730.

United States Court of Appeals Sixth Circuit.

June 1, 1959.

---

1. Taylor, Robert Lewis, Winston Churchill—An Informal Study of Greatness, pages 66–67.

Hagler & Malone, Memphis, Tenn. (Taylor, Malone, Jr., Memphis, Tenn., on the briefs), for appellants.

Arthur I. Gould, Dept. of Justice Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Robert N. Anderson, Millsaps Fitzhugh, U. S. Atty., Memphis, Tenn., on the briefs), for appellee.

Before ALLEN, McALLISTER and MILLER, Circuit Judges.

SHACKELFORD MILLER, Jr., Circuit Judge.

The taxpayers, Walter L. Berry and Clover G. Berry, his wife, brought this action to recover certain income taxes with interest thereon in the total amount of $18,468.62, paid by them for the year 1953, resulting from a deficiency assessment by the Commissioner. The District Judge dismissed the action and this appeal followed.

The following facts were stipulated by the parties. Under date of March 11, 1952, a partnership known as "Mississippi Valley Engineering and Construction Co. (hereinafter referred to as Mississippi Valley) and Walter L. Berry" was formed by said parties to bid on and to perform construction work for river bank stabilization and channel rectification under contract with the United States Corps of Engineers. In accordance with the provisions of the partnership agreement, all the capital for the venture was contributed by Berry and certain associates. No capital was contributed by Mississippi Valley, but Mississippi Valley agreed to perform the actual work and to provide management and supervision. The partnership agreement also provided that any project undertaken was to be performed on the "completed contract" basis with no profits to be distributed until completion and ascertainment of all liabilities and profit or loss on each project. The partnership was

conducted in accordance with the agreement.

The partnership commenced business in April, 1952, undertaking an extensive construction project at Braden's Bend on the Arkansas River. On October 1, 1952, Berry made a written offer to sell his interest in the partnership to Mississippi Valley. After discussions and negotiations, Berry and his associates sold out their entire interest in the partnership to Mississippi Valley on February 21, 1953, in consideration of the return of the balance of their invested capital and $75,000. Berry's share of the $75,000 was $56,250, which amount he received.

The construction project, which was the only project engaged in by the partnership, was approximately 76.5% completed by February 21, 1953. As of that date, the ultimate profit from the completed project could not have been determined. The construction project was subsequently completed by Mississippi Valley and the final pay estimate from the Corps of Engineers was submitted to Mississippi Valley on December 28, 1953.

The partnership, on March 16, 1954, filed a return entitled "Final Return" for the period ending December 31, 1953, which showed the entire ordinary net income from Braden's Bend project in the amount of $237,662.18 as due and distributable to Mississippi Valley.

In their 1953 joint income tax return Mr. and Mrs. Berry reported the $56,250 as long-term gain from the sale of a capital asset and had paid their tax accordingly. On December 6, 1956, subsequent to an audit of the books and records of the partnership, an Internal Revenue Agent recommended that the final partnership return be accepted as filed with the single exception of a change in the distribution of income earned by the partnership, namely, that $75,000 of the income be allocated to Berry and his associates. This recommendation was thereafter accepted by the Commissioner and an assessment was made against Berry for additional taxes arising out of the ruling by the Commissioner that Berry's portion of the $75,000 received

from the sale was taxable as ordinary income instead of as a long-term capital gain. Accordingly, the issue involved is whether the $56,250 received by Berry is taxable as a long-term gain from the sale of a capital asset or as ordinary income. The District Judge held that it was taxable as ordinary income.

It is settled law in this Circuit that the joint assets of a partnership belong to the firm and not the partners; that a partner has no individual property in any specific assets of the firm; that the interest of each partner in the partnership property is his share of the surplus, after the partnership debts are paid and after the partnership accounts are settled; and that the sale of a partnership interest in a going concern is not the sale of the assets of the partnership but is to be treated as the sale of a capital asset. Commissioner v. Shapiro, 6 Cir., 125 F.2d 532, 144 A.L.R. 349; Kaiser v. Glenn, 6 Cir., 216 F.2d 551. See also: United States v. Shapiro, 8 Cir., 178 F.2d 459; Swiren v. Commissioner, 7 Cir., 183 F.2d 656, 658–659, and cases cited in note 3 at page 658, certiorari denied 340 U.S. 912, 71 S.Ct. 293, 95 L.Ed. 659; Meyer v. United States, 7 Cir., 213 F.2d 278; Donoho v. United States, D.C.Minn., 168 F.Supp. 679. Although the anticipated profit to be received by the partnership from an incompleted construction contract is an element necessarily considered in placing a value upon the partnership interest, the sale is nevertheless, under the authorities above referred to, still a sale of a partnership interest, increased in value by reason of such potential profits, and must be treated as the sale of a capital asset.

The Government contends that the ruling of the Seventh Circuit in the Swiren and Meyer cases has been changed by its later ruling in Hulbert v. Commissioner, 7 Cir., 227 F.2d 399, and also relies upon the following cases from other circuits. United States v. Snow, 9 Cir., 223 F.2d 103, certiorari denied 350 U.S. 831, 76 S.Ct. 64, 100 L.Ed. 741; Leff v. Commissioner, 2 Cir., 235 F.2d 439; Le Sage v. Commissioner, 5 Cir., 173 F.2d 826;

Doyle v. Commissioner, 4 Cir., 102 F.2d 86; Tunnell v. United States, 3 Cir., 259 F.2d 916.

The rulings in some of those cases, however, turn upon the fact that at the time of the sale of the partnership interest a portion of the selling price was charged to the selling partner as income because at the time of sale it was earned income by the partnership, definitely ascertained in amount and not contingent upon the happening of future events. Income already earned by the partnership, to which the selling partner was legally entitled to his partnership share, was not changed into a capital asset by the sale.

The situation in the present case is quite different. The partnership agreement provided for a distribution of profits to the partners on the "completed contract" basis after it was determined whether the complete performance resulted in a profit or a loss. At the time of the sale of the partnership interest, the construction contract was only approximately 76.5% completed. Many uncertainties still existed which could have a decisive effect upon the ultimate result of whether upon the final completion of the contract the partnership would derive therefrom net income or suffer a loss. Bent v. Commissioner, 9 Cir., 56 F.2d 99, 102–103. The parties stipulated that at the time of sale the ultimate profit from the completed project could not have been determined. We find no basis for the determination by the Commissioner that at that time the taxpayer and his associates had earned $75,000 profit or income from the incompleted construction project and it is accordingly rejected.

With respect to any conflict that may exist in the cases above referred to, where there is no question about the income having been earned and the amount thereof to which the partner is entitled, we are, of course, controlled by the previous rulings in this circuit.

We are of the opinion that the rulings in such cases as Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75, and Harrison v. Schaffner, 312 U.S. 579, 61 S.Ct. 759, 85 L.Ed. 1055, are not applicable to this case. They do not involve the sale of a partnership interest. On the contrary, they involve the anticipatory assignment by an individual of income from a specific asset which asset is retained instead of being sold or transferred by the taxpayer. Compare: Blair v. Commissioner, 300 U.S. 5, 11–14, 57 S.Ct. 330, 81 L.Ed. 465, in which income was held not taxable to a transferor who transferred his entire interest in the property as well as the income to be derived therefrom. Nor is our ruling in Fisher v. Commissioner, 6 Cir., 209 F.2d 513, certiorari denied 347 U.S. 1014, 74 S.Ct. 868, 98 L.Ed. 1136, which is also relied upon by the Government, applicable to this case. That case did not involve the sale of a partnership interest. In addition, the income charged to the selling taxpayer was accrued interest at the time of the sale. Even if we should disregard in this case the important feature of a sale of a partnership interest, there still remains the fact that the right to any profit or income from the performance of the contract involved was too contingent and uncertain to bring the case within the rule of anticipatory assignment of earned income. Cold Metal Process Co. v. Commissioner, 6 Cir., 247 F.2d 864, 872–873, and cases cited therein; Commissioner v. Timken, 6 Cir., 141 F.2d 625, 629.

The judgment of the District Court is reversed and the case remanded to the District Court for further proceedings consistent with the views expressed herein.