Norah J. SAFFORD, Plaintiff,

v.

UNITED STATES of America, Defendant.

Noel ROSS II and Rosalie Safford, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Nos. 61-C-170, 61-C-171.

United States District Court
E. D. Wisconsin.
April 30, 1963.

Ross Safford II was appointed administrator of the estate.

At his death, Noel Ross Safford was a partner in the firm of architects doing business as "Foeller, Schober, Berners, Safford and Jahn" in Green Bay, Wisconsin. The partnership reported for United States income tax purposes on a calendar year for 1952 and prior years. Following the death of Noel Ross Safford, the surviving partners filed a United States partnership income tax return for the short period from January 1, 1953 through January 31, 1953. Thereafter the surviving partners filed a United States partnership income tax return for the fiscal year February 1, 1953 through January 31, 1954.

There was no written partnership agreement at the time of Noel Ross Safford's death, but there had been an oral agreement that profits would be divided equally among the four partners without regard to which partner brought in a job or which partner worked on it, and that profits from business done before Leonard M. Schober became a partner would be divided among the other three partners.[2]

The partnership kept its books and reported its income for United States income tax purposes on an accrual basis, using a "percentage of completion" method. In accruing income, the partnership accrued not only all amounts that had been billed but also the percentage of the fees which would be due on the completion of the next stage of the work which was in process. Thus, all work done to the end of the taxable year was to be accrued as income whether billed or not.

On December 31, 1952, the book value of Noel Ross Safford's partnership interest was $25,109.10, consisting of original capital in the amount of $2,500 plus undrawn profits of $22,609.10. Following

Robert E. Nelson, Green Bay, Wis., Robert H. Flatley, Green Bay, Wis., for plaintiffs.

Donald R. Anderson, Atty. Dept. of Justice, Washington, D. C., James B. Brennan, U. S. Atty., Milwaukee, Wis., for defendant.

GRUBB, District Judge.

These actions, consolidated for purposes of trial, are for refunds of income taxes, interest, and penalties paid by plaintiffs for the year 1954. Plaintiff, Norah J. Safford, seeks a refund in the amount of $3,799.20. Plaintiffs, Noel Ross Safford II and Rosalie Safford,[1] seek a refund in the amount of $3,632.07. The pertinent facts are as follows:

Noel Ross Safford died intestate on January 12, 1953. He was survived by his widow, Norah J. Safford, and his son, Noel Ross Safford II, who inherited his personal estate in equal shares. Noel

1. Rosalie Safford, the wife of Noel Ross Safford II, is joined as a plaintiff in her husband's action because they filed a joint return for the year 1954.

2. Foeller had died previously.

his death, the surviving partners paid to his estate the following amounts:

June 15, 1953 ..............$ 2,135.80
June 15, 1953 .............. 15,000.00
September 11, 1953 ........ 5,000.00
March 18, 1954 ............ 31,253.24

$53,389.04

■ They also paid $2,600 to his widow during the year following his death, making a total of $55,989.04. It is plaintiffs' contention that this $55,989.04 was paid by the surviving partners to the estate as the purchase price for a capital asset, i. e., Noel Ross Safford's "partnership interest," and therefore no part thereof was taxable income to the estate or to the plaintiffs to whom the estate was distributed.

The testimony and evidence indicate that there was an understanding, albeit very general and indefinite, that upon the death or retirement of a partner, the surviving partners would pay to him or to his representative his share of the assets of the firm, including his share of the accounts receivable or work in progress.

In accordance with this agreement, the books were closed as of January 31, 1953, and the work in process at Safford's death was valued by the surviving partners. On a majority of the jobs which were considered "good accounts," the estimated earnings on their completion were taken into the partnership's accounts receivable. The net gain was then divided equally among the surviving partners and Safford and credited to their capital accounts. Of each partner's share in the amount of $17,497.39, it was determined that $3,203.88 represented "normal partnership earnings" for January 1953, and that the balance of $14,293.51 was anticipated earnings upon the subsequent completion of that work.

On a number of accounts considered to be "doubtful," no expected earnings were taken into the accounts receivable. Instead, Safford's estate was paid $8,646.75 as its one-fourth share of the amounts actually collected on these accounts during the year after his death. Finally, there was credited to Safford's account $2,135.80 as his share (one-third) of the collections during January 1953 on the accounts of an earlier partnership.

Thus, the surviving partners paid directly to Safford's estate the amount of $53,389.04 which was composed of the following elements:

Safford's original capital contribution .....................$ 2,500.00

Safford's undrawn share of profits as of December 31, 1952 .. 22,609.10

Safford's share of the partnership's profits for January 1953 3,203.88

Safford's share of the collections during January 1953 on the accounts of the earlier partnership ....................... 2,135.80

Safford's former partnership share of the future partnership earnings on work in process at his death:
 Estimated as to "good accounts" .........$14,293.51
 Collected on "doubtful accounts" ......... 8,646.75 22,940.26

TOTAL ...................$53,389.04

---

These actions involve the amount of $22,940.26 which is shown above as Safford's share of future "earnings" on work in process. The Commissioner of Internal Revenue filed, on behalf of Safford's estate, a fiduciary income tax return for 1954 when the administrator failed to file one. In that return the

Commissioner included this $22,940.26 as "income in respect of a decedent" under Section 691 of the Internal Revenue Code of 1954.[3] The Commissioner allowed the estate a deduction in the same amount for distributions ($11,470.-13 each) to its two beneficiaries, Norah J. Safford and Noel Ross Safford II.

Upon his audit of the taxpayers' individual income tax returns for 1954, the Commissioner increased the reported income of each by the amount of $11,470.13 as income distributed in that year to them by the Safford estate. He assessed additional taxes and interest against each taxpayer on that additional income. He also assessed against each taxpayer penalties for failure to file a declaration of estimated taxes and for substantial underestimation of their taxes for 1954. These assessments were paid and refunds claimed and disallowed within the proper time, and these actions followed.

Plaintiffs urge that the amount of $22,940.26 was not earned income at the time of Safford's death. It is undisputed that the partnership was on an accrual basis, and yet this amount was not reported by the surviving partners on the partnership tax return for January 1–31, 1953. If this amount had represented "income" of the partnership, it should necessarily have been accrued in conformity with the partnership's usual accounting method and reported on the partnership's income tax return for January 1–31, 1953.

Even assuming that the $22,940.26 of "anticipated" future earnings could be considered income "earned" by decedent, the transaction by which the estate received $55,989.04 should be considered the sale of Safford's partnership interest and a capital asset. The proposition that the sale of a partnership interest is to be treated as the sale of an intangible asset or chose in action and, hence, of a capital asset, rather than of interests in specific assets of the firm, is now well established.

The Commissioner ultimately acquiesced in this view but stated that this rule should "be limited to those cases in which the transaction in substance and effect, as distinguished from form and appearance, is essentially the sale of a

3. "§ 691. *Recipients of income in respect of decedents*

"(a) *Inclusion in gross income*—

"(1) *General rule.*—The amount of all items of gross income in respect of a decedent which are not properly includible in respect of the taxable period in which falls the date of his death or a prior period (including the amount of all items of gross income in respect of a prior decedent, if the right to receive such amount was acquired by reason of the death of the prior decedent or by bequest, devise, or inheritance from the prior decedent) shall be included in the gross income, for the taxable year when received, of:

"(A) the estate of the decedent, if the right to receive the amount is acquired by the decedent's estate from the decedent;

"(B) the person who, by reason of the death of the decedent, acquires the right to receive the amount, if the right to receive the amount is not acquired by the decedent's estate from the decedent; or

"(C) the person who acquires from the decedent the right to receive the amount by bequest, devise, or inheritance, if the amount is received after a distribution by the decedent's estate of such right.

 \* \* \* \* \*

"(3) *Character of income determined by reference to decedent.*—The right, described in paragraph (1), to receive an amount shall be treated, in the hands of the estate of the decedent or any person who acquired such right by reason of the death of the decedent, or by bequest, devise, or inheritance from the decedent, as if it had been acquired by the estate or such person in the transaction in which the right to receive the income was originally derived and the amount includible in gross income under paragraph (1) or (2) shall be considered in the hands of the estate or such person to have the character which it would have had in the hands of the decedent if the decedent had lived and received such amount."

As will be hereinafter pointed out, the Commissioner erroneously applied Section 691 to the sale of decedent's partnership interest. This section has no application to a partner who died prior to January 1, 1955. See Sections 736, 753, and 771(b) (4), Internal Revenue Code of 1954, 26 U.S.C.A.

partnership interest." He also ruled that "payments made to a retiring partner which represent his distributive share of earnings for past services should be treated as ordinary income rather than the proceeds derived from a sale of his interest." See G.C.M. 26379, 1950–1 Cum.Bull. 58.

There have been many decisions dealing with the problem of payments made for a retiring or deceased partner's interest, part of which represents a share of the accounts receivable or work in process. The Court of Appeals for the Seventh Circuit first passed upon this issue in Swiren v. Commissioner of Internal Revenue, 183 F.2d 656 (7th Cir. 1950). In that decision, written by Judge Duffy, the court treated the sale by a partner of his interest in a law firm as a sale of a capital asset, notwithstanding that the assets included earned fees. It was held that the partnership interest must be treated as a whole, without regard to the nature of the underlying assets.

The same result was reached in a later decision—Meyer v. United States, 213 F.2d 278 (7th Cir. 1954)—where the partnership reported income on an accrual basis, as is the case here. Undistributed earnings were included in the price received by the selling partner. The court said, 213 F.2d at page 284:

"The government has urged that this taxpayer has 'realized' partnership profits for the July to February period in question. And it might also be argued that as to this taxpayer, he had a right to his distributive share of the partnership profits when they were accrued. But we find he sold out his entire partnership interest, quit the firm, and disposed of a capital asset. * * *"

In a still later decision—Hulbert v. Commissioner of Internal Revenue, 227 F.2d 399 (7th Cir. 1955)—the Seventh Circuit held that partnership profits were taxable to the selling partners under the following facts: A contract was entered into in March 1946 whereby the partnership agreed to sell its entire business to Kungsholm Baking Company, the agreement to be consummated "on or before June 26, 1946." The contract further provided that one half of the profits earned to the date of consummation of the agreement was to go to the sellers and one half to the buyer. The purchase of the firm's business was consummated on June 26, 1946. The court there held that the net profits accrued to the date of sale were profits of the partnership, and that as a matter of law the partners became liable for the taxes thereon.

These three decisions—Swiren, Meyer, and Hulbert, supra—have evoked much comment by courts of other circuits. It has been suggested that the Hulbert decision has impliedly overruled the Swiren and Meyer decisions. Leff v. Commissioner of Internal Revenue, 235 F.2d 439 (2d Cir. 1956); 6 Mertens, Law of Federal Income Taxation, § 35.55, p. 168; cf. Berry v. United States, 267 F.2d 298 (6th Cir. 1959).

On the other hand, in Tunnell v. United States, 148 F.Supp. 689, 693 (D.Del. 1957), aff'd 259 F.2d 916 (3rd Cir. 1958), the court stated that the suggestion that Hulbert overruled Swiren and Meyer is unfounded, stating:

"The Court in Hulbert simply was concerned with who, as a matter of law, must pay tax on the income. The majority ruled seller must pay. The dissent (per Lindley, J.) found the sum was income of the purchaser under the contract of the parties and referred to Swiren and Meyer merely to apply their teachings in limiting the partners' tax liability, as then computed, to capital gain from sale of assets. Nothing more than that was intended. If Swiren must fall, it must fall on grounds other than the authority of Hulbert v. Commissioner."

While these decisions of the Seventh Circuit are not easily distinguishable, it is probable that the court in Hulbert was influenced by the fact that there was an agreement of sale on one date and a closing date much later when title to the business passed. The court would not

permit the seller to assign income earned before the passing of title. In addition, the entire partnership business was sold to a third party rather than the transfer of a partnership interest to the remaining partners, as we have here.

The cases of Swiren and Meyer are controlling law on the facts here (assuming arguendo that the payments to the Safford estate partially represented *earned income*). These decisions were cited and followed in Donoho v. United States, 168 F.Supp. 679 (D.Minn.1958), aff'd 275 F.2d 489 (8th Cir. 1960). In that case the "Articles of Partnership" provided for the continuation of the partnership in the event of death, retirement, or disability of any of the partners, and the value of the share or interest of the deceased partner was to be returned to the representative of his estate. In accordance with the agreement, the surviving partners paid the value of the deceased partner's interest to his estate, including his share of the accounts receivable. The court in the Donoho decision cited the Uniform Partnership Act (which is effective in Wisconsin as well as in Minnesota) and the decision in United States v. Shapiro, 178 F.2d 459 (8th Cir. 1949), as authority for the rule that a partnership interest is property separate and distinct from the partnership and its individual underlying assets, including undistributed profits. In affirming the lower court's decision that there was no income to the deceased's estate, the court recognized that there is a wide split of authority on the question, but stated in 275 F.2d 489, at 491:

"The District Court's study of the cases including the decisions in the seventh circuit in Swiren v. Commissioner, 7 Cir., 183 F.2d 656, certiorari denied 340 U.S. 912, 71 S.Ct. 293, 95 L.Ed. 659, and Meyer v. United States, 7 Cir., 213 F.2d 278 and the cases cited for the government 'satisfied [the Court] that the holding of the Swiren case from the neighboring Seventh Circuit, applying the principles of United States

v. Shapiro, supra, is still the law applicable there and here.' [168 F. Supp. 683.] It accordingly overruled the contentions for the Government."

Among the decisions which have adopted the contrary view that undistributed profits should be segregated out and taxed as ordinary income on the sale of a partnership interest are Sherlock v. Commissioner of Internal Revenue, 294 F.2d 863 (5th Cir. 1961); Tunnell v. United States, 259 F.2d 916 (3rd Cir. 1958); Leff v. Commissioner of Internal Revenue, 235 F.2d 439 (2d Cir. 1956); and United States v. Snow, 223 F.2d 103 (9th Cir. 1955).

■ Since this court must apply the law as it is laid down by the Court of Appeals for the Seventh Circuit, it must be concluded that the $22,940.26 sought to be taxed here is not ordinary income but part of the consideration paid by the surviving partners for a capital asset.

The government contends that even if Swiren and Meyer were directly applicable to a "sale" of decedent's partnership interest, the evidence does not establish that the parties considered the transfer of decedent's interest as a "sale." It relies on portions of the testimony of plaintiff Noel Ross Safford II that there was only one conference between the surviving partners and said plaintiff as administrator of the estate. During this conference, the problem of what the value of decedent's share of the work in process was discussed, and that the plaintiffs "weren't bargaining."

At the conclusion of the conference, they were satisfied with the procedure suggested by the surviving partners in valuing decedent's interest. The conference was "very amicable," and plaintiffs assumed that the partners would "treat us more than fairly." Plaintiffs were not concerned with the partnership books and did not ask to see them. Defendant further points out that at the conference the words "buy," "sell," or "purchase" were not used by the parties. The government is putting too technical

a meaning on the word "sale." Neither the plaintiffs nor the surviving partners were aware of the niceties of federal income taxation. The fact that there was no dissatisfaction or "hard bargaining" by the heirs does not make the transaction any less a "sale." By way of illustration, if one goes to a store to buy a new hat, no one would reasonably contend that the transaction was not a "sale" simply because the buyer and seller did not bargain over the price.

On March 18, 1954, the date of the last payment by the surviving partners, plaintiff Noel Ross Safford II, as administrator of decedent's estate, executed a document entitled "Release." This document recited that $55,989.04 had been paid to the estate for "the complete release of all claims" against the surviving partners, and that the estate "will transfer all the right, title and interest" of decedent in the partnership to the surviving partners. It further gives the surviving partners permission to retain the name "Safford" in the firm name.

■ In applying the general rule of federal income taxation that *substance* rather than *form* must determine the nature of a transaction—see Commissioner of Internal Revenue v. Court Holding Co., 324 U.S. 331, 65 S.Ct. 707, 89 L.Ed. 981 (1945)—the transfer of decedent's partnership interest upon payment of $55,989.04 by the surviving partners was a "sale" and no part thereof was taxable as ordinary income.[4]

■ The government points out that under the Wisconsin Uniform Partnership Act, the death of a partner dissolves the partnership, and the deceased partner's rights in specific partnership property vest in the surviving partners. Section 123.36(4), Wis.Stats. His interest in the partnership, which is his share of the profits and surplus, is a chose in action which passes to his estate. Section 123.22, Wis.Stats.; Mattson v. Wagstad, 188 Wis. 566, 206 N.W. 865 (1926). The government also recognizes that to avoid the complete liquidation of the firm, the partners may agree that the surviving partners will purchase the interest of a deceased partner and continue the partnership, as was done in this case.

It should be noted that the 1954 Internal Revenue Code has clarified the problem to some extent by new provisions with respect to any partnership's taxable year beginning after December 31, 1954. Section 771(a)(1), 26 U.S.C.A. Gain or loss on the sale of a partnership interest is treated as gain or loss on the sale of a capital asset (Section 741, 26 U.S.C.A.) except to the extent that it is attributable to unrealized receivables (Section 751, 26 U.S.C.A.) which are treated as ordinary income. See also Sections 736 and 753, 26 U.S.C.A., with respect to payments to a retiring partner or a deceased partner's successor in interest. No similar provisions were contained in the 1939 Internal Revenue Code which is applicable here.[5]

---

4. Since it had a cost basis of that amount in the hands of the estate, there was no capital gain to be taxed. The partnership interest was included in the federal estate tax return filed August 30, 1953, at a value of $55,888.55, so there is a discrepancy of $100.49 which is not material to this action.

5. The Report of the House Committee on Ways and Means, U.S.Code Cong. and Admin.News, 83rd Cong., 2d Sess. (1954), at pp. 4096–4098, analyzes the new provisions as follows:

 XXII. PARTNERS AND PARTNERSHIPS

 "D. *Transfer of an interest in a partnership* (secs. 741–743, 751)

"(1) *General rules.*—Under present decisions the sale of a partnership interest is generally considered to be a sale of a capital asset, and any gain or loss realized is treated as capital gain or loss. It is not clear whether the sale of an interest whose value is attributable to uncollected rights to income gives rise to capital gain or ordinary income.
\* \* \*

"Because of the confusion in this area, basic rules have been set forth in order to clarify tax treatment and at the same time to prevent the use of the sale of an interest in a partnership as a device for converting rights to income into capital gain.

In summary, the $22,940.27 which the government claims to be "income in respect of a decedent" under Section 691, 26 U.S.C.A., was in fact not earned prior to decedent's death; and even if considered to have been earned, it cannot be segregated out and taxed as ordinary income under the rule laid down by the Seventh Circuit in the Swiren and Meyer cases and the other decisions cited.

Plaintiffs are entitled to a refund of the amount of taxes, penalties,[6] and interest assessed and paid.

> "The general rule that the sale of an interest in a partnership is to be treated as the sale of a capital asset is retained. * * *
>
> \* \* \* \* \*
>
> "(2) *Unrealized receivables or fees and inventory or stock in trade.*—In order to prevent the conversion of potential ordinary income into capital gain by virtue of transfers of partnership interests, certain rules have been adopted by your committee which will apply to all dispositions of partnership interests. The bill provides that, if in connection with the transfer of a partnership interest, the partner receives any amount attributable to his share of (1) the unrealized receivables and fees of the partnerships or (2) substantially appreciated or depreciated inventory or stock in trade, such amounts are to be treated as ordinary gain or loss. In effect, the partner is treated as though he disposed of such items independently of the rest of his partnership interest.
>
> \* \* \* \* \*
>
> "A decedent partner's share of unrealized receivables and fees will be treated as income in respect of a decedent. Such rights to income will be taxed to the estate or heirs when collected, with an appropriate adjustment for estate taxes. * * *
>
> "The term 'unrealized receivables or fees' is used to apply to any rights to income which have not been included in gross income under the method of accounting employed by the partnership. * * *

The court hereby adopts the stipulated facts as its findings of fact. Additional findings of fact are as set forth in this decision, as are the court's conclusions of law, in conformity with Rule 52(a) of the Federal Rules of Civil Procedure.

Counsel for plaintiffs is hereby directed to prepare an order for judgment and judgment in accordance with this decision, submitting them to counsel for defendant for approval as to arithmetical computation and form only.

> \* \* \* \* \*
>
> "The provisions relating to unrealized receivables or fees and appreciated or depreciated inventory are necessary to prevent the use of the partnership as a device for obtaining capital-gain treatment on fees or other rights to income. Amounts attributable to such rights would be treated as ordinary income if realized in normal course by the partnership. The sale of a partnership interest or distributions to partners should not be permitted to change the character of this income. The statutory treatment proposed, in general, regards the income rights as severable from the partnership interest and as subject to the same tax consequences which would be accorded an individual entrepreneur."

A reading of this report clearly indicates that the new provisions of the 1954 Internal Revenue Code were enacted in order to avoid the problems raised in the instant action. A different result might have been reached if these provisions were applicable here, but this court must apply the law as it existed prior to December 31, 1954. See Section 771, 26 U.S.C.A.

6. For purposes of making a complete record, it should be noted that the government concedes that plaintiffs are entitled to recover the penalties assessed under Section 294(d) (2), Internal Revenue Code of 1939, for substantial underestimation of their taxes in 1954. See Commissioner of Internal Revenue v. Acker, 361 U.S. 87, 80 S.Ct. 144, 4 L. Ed.2d 127 (1959).